**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jeffrey A. BARLOW,
Defendant-Appellant.**

**No. 81–1331.**

United States Court of Appeals,
Sixth Circuit.

Argued April 27, 1982.

Decided Nov. 24, 1982.

Rehearing and Rehearing En Banc
Denied Feb. 2, 1983.

William L. Woodard, Deputy Defender, Kenneth R. Sasse, Detroit, Mich., for defendant-appellant.

Richard A. Rossman, U.S. Atty., Joseph E. Papelian, Asst. U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Before KEITH and KRUPANSKY, Circuit Judges, and MILES,* Chief District Judge.

MILES, Chief District Judge.

Jeffrey A. Barlow appeals his conviction for participating in a conspiracy to steal fur garments from an interstate shipment and for committing the substantive offense stemming from the conspiracy. 18 U.S.C. §§ 371, 659 (1976). The issues on appeal are: (1) whether the district court erred in refusing to suppress the appellant's alibi which he gave while allegedly detained illegally by local authorities, (2) whether the trial court abused its discretion in denying the appellant's motion for a mistrial after a voir dire question showed juror knowledge of pretrial publicity, (3) whether the district court violated appellant Barlow's right to confrontation or abused its discretion in ad-

mitting, under Rule 804(b)(5) of the Federal Rules of Evidence, grand jury testimony of appellant's wife who asserted her privilege not to testify against her husband, and (4) whether the district court abused its discretion in denying Barlow's motion for a new trial which was based on a co-defendant's post-conviction letter indicating Barlow's innocence. For the reasons set out below we affirm the appellant's conviction.

## FACTS

In the early morning hours of August 9, 1980, Lewis Williams, with the assistance of the appellant, stole a van belonging to the Detroit Fur Storage and Cleaning Company (Detroit Fur) and containing fur garments worth over one million dollars. Williams drove the van to where a truck, which he had rented the day before, was parked. The appellant and Williams unloaded the furs from the stolen van into the rental truck. They then drove to meet Iantha Humphries, the appellant's girl friend at the time and the woman whom he married before trial. All three later went to the home of Gaynell Humphries, sister of Iantha, where they unloaded the stolen garments.

That evening, around 11:30 p.m., Detroit police officers arrested appellant Barlow, who was sitting in the empty rental truck, in connection with the fur theft. In the meantime, the president of Detroit Fur had contacted the Federal Bureau of Investigation (FBI) after receiving a report that a truck had been stolen. An FBI agent followed up this information by inquiring with the Detroit Police Department. The police told the agent that appellant Barlow had been arrested on a state charge of grand larceny; however, they did not permit the FBI to interview the subject until the following morning, Sunday, August 10. During their independent investigations the FBI and the Detroit police had agreed to exchange information on the case. Barlow remained in the custody of local authorities

---

* Honorable Wendell A. Miles, Chief Judge, United States District Court, Western District of Michigan, sitting by designation.

until the morning of August 11 when he was turned over to the FBI. On the same day he appeared before a United States Magistrate.

When the FBI interviewed the appellant while he was still in police custody he waived his *Miranda* rights and gave a statement. Later the same day two other agents also interrogated Barlow. During one of the interviews the appellant stated three times that he had been with Iantha Humphries, his girl friend, at the time of the theft. He claimed to have been with her from August 8 at 11:30 p.m. to the next morning, August 9 at 8:00 a.m. Iantha Humphries' grand jury testimony, however, revealed that she had not seen the appellant after 11:30 p.m., August 8, until he and Williams knocked at her door approximately three and a half hours later. She also stated that she observed that they had driven the rental truck. The government was permitted to introduce the grand jury testimony against Barlow at trial under Rule 804(b)(5) of the Federal Rules of Evidence. Humphries had married the appellant before trial and exercised her privilege not to testify against her spouse which, the trial court ruled, made her "unavailable" within the meaning of the Rule.

Barlow and Williams were tried together; however, two juries were drawn. One heard Williams' case during which Iantha Humphries testified; the other heard Barlow's case without her testimony. During jury selection, in response to a question by the court, one juror noted the publicity which the case had received and inquired whether one of the defendants had married someone who was going to testify against him. The trial judge responded that there "was something about that in the paper." After he excused those who expressed some bias on account of the publicity, including the juror who knew that a witness had married a defendant, the judge interviewed in chambers the remaining members of the panel who were familiar with the publicity. After questioning those 27 individuals the court excused two on the basis of their responses.

After trial appellant Barlow moved for a new trial on the basis of a letter which co-defendant Williams, who had not cooperated with Barlow's defense, wrote to Iantha Humphries stating that Barlow took no part in the crime. The court denied this motion.

### I.

While in the custody of the Detroit police the appellant consented to an interview with the FBI after being given his *Miranda* rights. In this interview he offered an alibi which conflicted with his girl friend's grand jury testimony. The government, permitted to use both the appellant's statement and the grand jury testimony at trial, sought to rebut the appellant's alibi and demonstrate his consciousness of a weak case. Barlow contends that his statement should have been excluded because it was given while he was detained in violation of Rule 5(a) of the Federal Rules of Criminal Procedure.[1]

---

1. Appellant also claims that the local arrest was without probable cause making the statements obtained by the FBI inadmissible "poisonous fruit." *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). He did not, however, raise this issue in the district court; therefore, he is precluded from making the argument on appeal. *See, e.g., United States v. Vasquez,* 638 F.2d 507, 530 n. 15 (2d Cir.1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1490, 67 L.Ed.2d 620 (1981).

We nevertheless believe that the appellant's contention is without merit. First, the only support for his position is that a Detroit police sergeant stated that while the appellant was in his custody he did not have enough evidence to obtain a warrant. Assuming that that is indeed what the officer said, his beliefs or those of the prosecutor are not controlling on the question of probable cause. The facts of an arrest are to be judged on an objective standard. *United States v. Tramontana,* 460 F.2d 464, 466–67 (2d Cir.1972) (citing *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). Second, and more importantly, the exclusion of the appellant's statements would not have altered the jury verdict. The overwhelming weight of the evidence supported conviction. The statements were not incriminating; they were denials of any wrongdoing. Therefore, assuming that the admission of them was error, it does not rise to the level of plain error. Fed.R.Crim.P. 52(a); *see Carvey v. LeFevre,* 611 F.2d 19, 23 (2d Cir.1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 276 (1980).

■ Rule 5(a) requires that an arresting officer take the arrested person before a federal magistrate "without unnecessary delay."[2] Failure to comply with this requirement renders inadmissible statements obtained from an accused prior to his appearance before a magistrate. *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). For the purposes of Rule 5(a) delay is measured from the time custody by federal authorities commences. *United States v. Davis,* 459 F.2d 167, 170 (6th Cir. 1972). The same principle ordinarily applies when a suspect is first taken into custody by local or state police and subsequently turned over to federal authorities. When, however, federal and state officials have a working arrangement to elicit information from an accused before taking him before a magistrate, delay is measured from the time state custody commences. *United States v. Woods,* 613 F.2d 629, 633 (6th Cir.) (quoting *United States v. Davis,* 459 F.2d at 170), *cert. denied,* 446 U.S. 920, 100 S.Ct. 1856, 64 L.Ed.2d 275 (1980); *see Anderson v. United States,* 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1942). The appellant argues that this exception is applicable to this case. We disagree.

This court has considered this particular issue on several occasions. *United States v. Woods,* 613 F.2d at 633; *United States v. Davis,* 459 F.2d at 170; *United States v. Rose,* 415 F.2d 742, 743 (6th Cir.) (*per curiam*), *cert. denied,* 396 U.S. 971, 90 S.Ct. 458, 24 L.Ed.2d 438 (1969); *United States v. Hindmarsh,* 389 F.2d 137, 146 (6th Cir.), *cert. denied,* 393 U.S. 866, 89 S.Ct. 150, 21 L.Ed.2d 134 (1968); *United States v. Sailer,* 309 F.2d 541 (6th Cir.1962) (*per curiam*),

*cert. denied,* 374 U.S. 835, 83 S.Ct. 1884, 10 L.Ed.2d 1057 (1963). In *Woods,* for example, the appellant had been arrested by local police for state charges and detained eight days at which time the FBI interviewed him. In the interview he made certain incriminating remarks which the government was allowed to introduce at trial. This court found "no evidence which indicate[d] that the [federal-state] relationship was 'illegitimate,' or that 'the state officials unlawfully detained [Woods] in order to allow the federal investigator to secure a confession.'" 613 F.2d at 633 (quoting *United States v. Rollerson,* 491 F.2d 1209, 1212 (5th Cir.1974)).

■ Other courts have expressed this same requirement in slightly different terms. *United States v. Torres,* 663 F.2d 1019, 1024 (10th Cir.1981) (state custody must be "used in order to circumvent Rule 5(a)"), *cert. denied,* —— U.S. ——, 102 S.Ct. 2237, 72 L.Ed.2d 847 (1982); *United States v. Gaines,* 555 F.2d 618, 622 (7th Cir.1977) (delay must be "deliberately induced for the express purpose of producing evidence"); *United States v. Halbert,* 436 F.2d 1226, 1229 (9th Cir.1970) ("state custody need not be taken into account unless there is a 'collusive working agreement' between state and federal authorities"). We reaffirm our previous holdings. For the purposes of Rule 5(a) the time which a defendant spends in state custody will not be attributable to federal detention in the absence of some working relationship between state and federal law enforcement personnel. This collaborative effort must be specifically designed to circumvent the requirements of Rule 5(a), that is, designed to produce evidence which would not be admissible if the defendant were in federal

---

**2.** Rule 5 of the Federal Rules of Criminal Procedure, entitled "Initial Appearance Before the Magistrate," provides in subsection (a) in full:
(a) In General. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer

authorized by 18 U.S.C. § 3041. If a person arrested without a warrant is brought before a magistrate, a complaint shall be filed forthwith which shall comply with the requirements of Rule 4(a) with respect to the showing of probable cause. When a person, arrested with or without a warrant or given a summons, appears initially before the magistrate, the magistrate shall proceed in accordance with the applicable subdivisions of this rule.

custody the entire time. *See, e.g., United States v. Broadhead,* 413 F.2d 1351, 1358 (7th Cir.1969) (at FBI's request police erected roadblock, arrested defendant, and provided the jail to detain him and conduct a line-up), *cert. denied,* 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508 (1970).

In the instant case there is no indication that such a collaborative arrangement existed. The police and FBI were conducting legitimate independent investigations. The FBI's official involvement was triggered by a call from the president of Detroit Fur almost twenty hours after the theft. Local authorities, in the meantime, had been pursuing the matter for state law violations. By the time the FBI agent on duty called the Detroit police Barlow already had been arrested. The appellant's arrest was the decision of the police, not the FBI. What the police and FBI had agreed to was a simple exchange of information. A mere suspicion of improper cooperation is not enough to make out a Rule 5(a) violation. *United States v. Gaines,* 555 F.2d at 662.

■ An additional reason exists to find no violation of the appellant's right to a prompt arraignment. As the court below stated, waiver of one's *Miranda* rights also constitutes a waiver under *McNabb-Mallory. United States v. Indian Boy X,* 565 F.2d 585, 591 (9th Cir.1977), *cert. denied,* 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978); *Pettyjohn v. United States,* 419 F.2d 651, 656 (D.C.Cir.1969), *cert. denied,* 397 U.S. 1058, 90 S.Ct. 1383, 25 L.Ed.2d 676 (1970); *see United States v. Duvall,* 537 F.2d 15, 24 n. 9 (2d Cir.), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). In the instant case appellant Barlow waived his *Miranda* rights before giving his statement to the FBI. He now cannot seek the protection of Rule 5(a). A valid *Miranda* waiver also waives the prompt judicial warning of one's constitutional rights.

## II.

■ The appellant's second contention is that his sixth amendment right to an impartial jury was violated when one juror inquired of the court during voir dire whether one of the defendants had married someone who was going to testify against him. The juror's question was in response to Judge DeMascio's inquiry as to whether pretrial publicity had affected any of the jurors. The court did not ask for the contents of the publicity to which they had been exposed.

We find no error. In fact, Judge DeMascio's procedure was exemplary. After the one juror's comment, the court excused the juror and five other panel members who indicated bias on account of the publicity. The court then took the remaining prospective jurors into chambers to ask them separately about their exposure to the publicity. On the basis of this interrogation, the judge excused two more jurors and later stated that only one juror had heard about the marriage.

The appellant contends that the court's initial question as to whether the pretrial publicity gave the jury "any idea about this case" was tantamount to a "content" question which should be asked of jurors individually out of the presence of the others. *See United States v. Johnson,* 584 F.2d 148, 156 n. 17 (6th Cir.1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1240, 59 L.Ed.2d 469 (1979); *see also United States v. Ferreboueuf,* 632 F.2d 832 (9th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 368 (1981). By asking his question of the whole panel the trial judge was attempting to ascertain any possible juror bias without relating the details of the news articles. In *United States v. Johnson,* 584 F.2d 148 (6th Cir.1978), *cert. denied,* 440 U.S. 918, 99 S.Ct. 1240, 59 L.Ed.2d 469 (1979), we specifically noted that such content questions need only be asked when "juror exposure to prejudicial material is not apparent from responses to more general questions." *Id.* at 156. The trial judge did not ask a "content" question. He was merely following this court's recommended procedure to elicit general information first.

■ A defendant's sixth amendment right to an impartial jury is not infringed

automatically by the jury's exposure to publicity. What the defendant is entitled to is a jury whose members are all able to set aside their impressions and render a fair and impartial verdict based solely on the evidence received in open court. The record clearly reflects that the defendant ultimately selected such a jury. The trial court therefore properly denied the appellant's motion to strike the panel.

### III.

Appellant Barlow next contends that the trial court admitted the grand jury testimony of Iantha Humphries in violation of Rule 804(b)(5) of the Federal Rules of Evidence and his sixth amendment right to confrontation.

#### A. Rule 804(b)(5)

Rule 804(b)(5) provides for the admission of statements which otherwise would be hearsay if they have circumstantial guarantees of trustworthiness equivalent to the other hearsay exceptions and if the trial court finds that they are offered to prove a material fact and are more probative than other evidence obtainable through reasonable efforts.[3]

The admissibility of grand jury testimony under this exception has been the subject of a number of opinions in other circuits. Although there is general agreement that such testimony can be admitted under Rule 804(b)(5), differences exist as to the exact terms of its admission, particularly on the question of what constitutes "equivalent

circumstantial guarantees of trustworthiness" within the meaning of the Rule. See *Garner v. United States,* 439 U.S. 936, 939, 99 S.Ct. 333, 335, 58 L.Ed.2d 333 (Stewart, J., dissenting), *denying cert. to* 574 F.2d 1141 (4th Cir.1978); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 804(b)(5)[01] (1981).

In *United States v. Carlson,* 547 F.2d 1346 (9th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977), the Eighth Circuit held that the Rule 804(b)(5) exception could be used to introduce grand jury testimony of defendants' co-conspirator in a narcotics distribution operation. Before the grand jury the co-conspirator had named the defendants as his suppliers and customers; however, at trial he refused to testify despite having been given immunity and held in contempt. The trial court, in ruling the testimony admissible, specifically found that the witness' refusal was due to threats on his life by one of the defendants. The court of appeals noted that the testimony had strong indicia of reliability because it was given under oath, related facts of which the declarant had first-hand knowledge, and was never recanted. Need for the testimony was also significant in the case; no other witness could testify to the subject and nature of the transaction among the defendants and the witness.

The Fifth Circuit, however, refused to permit the introduction of grand jury testimony under similar circumstances. In

---

**3.** Rule 804(b)(5) of the Federal Rules of Evidence provides in full:

> (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> \* \* \* \* \* \*
>
> (5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the

> statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

As stated in the text of the rule, the trial court must determine that the testimony be offered to prove a material fact, that it be more probative than other evidence which can be reasonably procured, and that its introduction serve the purposes of the rules of evidence and the interests of justice. Also, advance notice of the intent to use such evidence is required. None of these factors is in issue in this case.

*United States v. Gonzalez,* 559 F.2d 1271 (5th Cir.1977), the grand jury witness, a previously-convicted co-conspirator of the defendant, implicated the defendant in a marijuana importation scheme. Unlike *Carlson,* the court of appeals emphasized, the defendant did not threaten the witness and the court did not hold the witness in contempt.

In *United States v. West,* 574 F.2d 1131 (4th Cir.1978), the Fourth Circuit followed the principle of *Carlson* in upholding the admission of grand jury testimony of a government informant who had been murdered a month before trial. The court was persuaded that the testimony possessed "substantial guarantees of trustworthiness" because it was corroborated by extensive photographs, recordings and observations of government agents. Also, the informant gave periodic reports during his transactions with the defendants and noted before the grand jury that they were accurate. Although the deceased witness had had a criminal record, this information was put before the jury in the form of impeachment evidence.

The Fourth Circuit took up this question also in *United States v. Garner,* 574 F.2d 1141 (4th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978), and upheld

the use of such testimony of an alleged co-conspirator who declined to testify at trial despite attempts by his counsel and the trial court to compel his trial testimony. After the transcript was read to the jury, he took the stand and stated that he knew the defendants and that his grand jury testimony was false. The court specifically referred to *Gonzalez* noting that the witness in that case was under a lot of pressure to testify and his testimony was uncorroborated. *Id.* at 1144. Critical to the *Garner* holding was the existence of substantial corroborating testimony.[4]

 We believe that under certain circumstances grand jury testimony can be properly admitted under the Federal Rules of Evidence. In determining whether grand jury testimony of a government witness is admissible under Rule 804(b)(5) the trial court first must ascertain whether the witness is "unavailable" within the meaning of the Rule. If a witness "persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so" he is "unavailable" for the purposes of the hearsay rules. Fed.R. Evid. 804(a)(2). In the case at bar, Iantha Humphries was clearly unavailable. She had planned to exercise her privilege not to testify against her husband, the defendant.

4. More recently, in *United States v. Balano,* 618 F.2d 624 (10th Cir.1979), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980), the Tenth Circuit allowed the admission of grand jury testimony of a convicted participant in the crime whom the defendant had coerced into silence by threatening his life. Rather than reaching the substantive question of whether the testimony met the standards of Rule 804(b)(5), the court decided the case on a waiver question. It held that a valid waiver of the constitutional right to confrontation also constituted a valid waiver of an objection under the Federal Rules of Evidence.

Also, in *United States v. Thevis,* 665 F.2d 616 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982), the Fifth Circuit considered a similar question. The court took exception with the reasoning in both *West* and *Carlson.* It believed that *Carlson* unnecessarily required as a precondition to admissibility of grand jury testimony a finding of a confrontation clause waiver even though the proffered evidence met reliability standards of Rule 804(b)(5). The court also took exception to

what it perceived as the *West* and *Carlson* conclusion that corroborated grand jury testimony necessarily meets the reliability standards of the Rule. *Id.* at 629–30.

We do not believe that *Carlson* and *West* stand for such broad propositions. Those cases represent attempts to ensure the reliability of particular grand jury testimony. In *Carlson,* for example, the Eighth Circuit specifically chose to avoid the "far-reaching and sensitive issue" of whether the confrontation clause was only as extensive as the rules of evidence. The court assumed that confrontation rights were in issue and decided the question on a waiver theory. *United States v. Carlson,* 547 F.2d at 1357. It did not require a waiver finding as a condition precedent to admissibility under Rule 804.

Also, our reading of *West* and *Carlson* does not reveal that they stand for the general proposition that corroborated grand jury testimony meets the standards of Rule 804(b)(5). Rather, we believe that corroboration was merely one factor which supported a finding of trustworthiness.

There is no indication on the record that the marriage was a sham.

■ Second, the trial court must determine whether the substance of the grand jury testimony possesses "circumstantial guarantees of truthworthiness" equivalent to the other exceptions included in Rule 804. In making this determination the trial court should consider the declarant's relationship with both the defendant and the government, the declarant's motivation to testify before the grand jury, the extent to which the testimony reflects the declarant's personal knowledge, whether the declarant has ever recanted the testimony, and the existence of corroborating evidence available for cross-examination.

■ In the case at bar the circumstantial guarantees of trustworthiness were substantial. The declarant, Iantha Humphries, was the defendant's girl friend and had been given immunity from prosecution; therefore, she had no motive to implicate the defendant and exculpate herself. Her testimony which conflicted with the defendant's alibi conveyed information of which she had personal knowledge, that is, when, where and with whom she saw the defendant. Moreover, the other testimonial and physical evidence corroborated the substance of the grand jury testimony. The record is replete with evidence from which the trier of fact could have inferred that the defendant was not with his girl friend as he claimed but was with Lewis Williams participating in the fur theft. The extent of corroboration will vary depending on the purpose for which the grand jury testimony is offered. In *West,* for example, the testimony was that of a government informant who conducted several transactions in which the defendants committed crimes. In such a case the trial court should require a high degree of corroboration. In the instant case, however, the testimony was offered for a limited purpose, to establish that the defendant was not with his girl friend when he claimed. By itself the testimony did not relate evidence of criminal activity. Corroboration, therefore, need not be as great.

■ Finally, other factors which have no direct bearing on "circumstantial guarantees of truthworthiness" may be considered to determine whether the "purposes of [the rules of evidence] and the interests of justice will best be served" by the admission of grand jury testimony. Fed.R.Evid. 804(b)(5)(C); *see* note 3 *supra.* We therefore believe the trial court may examine the reasons for the witness' unavailability. For example, the appellant in the instant case chose to marry Iantha Humphries before trial which permitted her to assert her marital privilege. His role in making her unavailable militates in favor of admitting the grand jury testimony. We do not believe that the marriage was a sham; it was not and the court below stated so. We also do not consider this analysis to be an indirect way of finding a waiver of appellant's sixth amendment confrontation rights. Absent a finding that the marriage was designed to make Iantha Humphries "unavailable," no waiver should exist. See *Steele v. Taylor,* 684 F.2d 1193, 1200–01 n. 8 (6th Cir.1982) (defendants procured witness' absence); *United States v. Thevis,* 665 F.2d 616 (5th Cir.) (defendant murdered the grand jury witness), *cert. denied,* —— U.S. ——, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982); *United States v. Balano,* 618 F.2d 624 (10th Cir. 1979) (defendant threatened the life of the grand jury witness), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *United States v. Carlson,* 547 F.2d 1346 (8th Cir.1976) (witness' refusal to testify was due to threats on his life), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). We simply state that among the many factors which a court may consider in determining the admissibility of grand jury testimony is the extent of the defendant's role in making the witness unavailable.

Another factor to be considered is the subject matter of the evidence. If, for example, the testimony is direct evidence of guilt or critical proof of guilt, we believe that other factors, such as corroboration discussed above, must weigh heavily in favor of admissibility. On the other hand, if the evidence goes to a collateral matter or

is circumstantial or cumulative evidence, we believe that the other factors need not be as strong. As stated before, Iantha Humphries' grand jury testimony was offered for a limited purpose and was only part of the government's extensive case of circumstantial evidence.

We believe that the grand jury testimony satisfied all of the requirements of Rule 804(b)(5) and therefore was properly admitted under the rules of evidence.

### B. Confrontation Clause

Appellant Barlow also maintains that the admission of the grand jury testimony violated his sixth amendment right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The confrontation clause has been the subject of frequent construction, particularly with respect to the government's use of hearsay testimony at trial.[5] Introduction of such evidence necessarily conflicts with the fundamental purposes of this constitutional guarantee: affording the defendant the opportunity to cross-examine his accusers and enabling the trier of fact to evaluate the credibility of witnesses. In determining to what extent the confrontation clause permits the introduction of evidence which fits within one of the recognized exceptions to the rule against hearsay courts have sought to balance the right of the defendant to have live testimony presented against him and the interest of the government in ensuring effective law enforcement.

The Supreme Court's most recent pronouncement in this area was in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which involved the use of a preliminary hearing transcript at the defendant's trial. Roberts, charged with having stolen credit cards belonging to Isaacs, called Isaacs' daughter at the preliminary hearing. The defendant had hoped to establish that the daughter gave him the cards; however, she denied having done so. At the time of trial the daughter was unavailable and the court allowed the prosecution to introduce the preliminary hearing transcript. In upholding the admission of the testimony, the Supreme Court set forth a two-step analysis. First, the confrontation clause requires that the hearsay declarant be unavailable. Second, the statements must possess "adequate 'indicia of reliability.'" 448 U.S. at 66, 100 S.Ct. at 2539. The Court went on to note that "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.* (footnote omitted). What *Roberts* has left unresolved is whether prior cross-examination, or the opportunity to cross-examine, is essential to satisfy the constitutional requirements.[6] *Id.* at 70, 100 S.Ct. at 2541; *Valenzuela v. Griffin,* 654 F.2d 707, 709 & n. 3 (10th Cir.1981). Moreover, the Court specifically refused to develop an analytical framework for resolution of confrontation clause questions. It chose to proceed on a case-by-case basis indicating that it had been "steering a middle course among pro-

---

**5.** The confrontation clause does not bar hearsay testimony automatically. *See, e.g., Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (preliminary hearing testimony of a witness not produced at trial admissible when defense counsel's questioning amounted to cross-examination); *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972) (prior trial testimony of an unavailable witness admissible); *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (declarations of a co-conspirator admissible); *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (preliminary hearing testimony which was cross-examined admissible when witness is unavailable); and *Kirby v. United States,* 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890

(1899) (dying declarations admissible). *See generally McCormick on Evidence* 604–07 (E. Cleary ed. 1972). *Cf. Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) (preliminary hearing transcript of state's witness not admissible when state had not attempted to seek his presence); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (preliminary hearing testimony not admissible when defendants had no opportunity to cross-examine).

**6.** The Court believed that defense counsel's direct examination of the daughter was "the equivalent of significant cross examination." 448 U.S. at 70, 100 S.Ct. at 2541.

posed alternatives."[7] 448 U.S. at 66 n. 9, 100 S.Ct. at 2539 n. 9.

The two-step test of *Roberts* does not give much guidance in resolving the issue before this court. The declarant first must be unavailable. This requirement is clearly satisfied on these facts. The witness, Iantha Humphries, chose to exercise her marital privilege which put her out of reach of the prosecution. Second, there must be "adequate 'indicia of reliability.'" Reliability on these facts cannot be inferred as the Court suggested because Rule 804(b)(5) is not a "firmly rooted hearsay exception."[8] Therefore, the hearsay evidence may be used only upon "a showing of particularized guarantees of trustworthiness." 448 U.S. at 66, 100 S.Ct. at 2539. This analysis, however, leaves us with the question of whether the "circumstantial guarantees of trustworthiness" required by Rule 804(b)(5) are equivalent to the "particularized guarantees of trustworthiness" mandated by *Roberts.* We do not attempt to delineate between these two concepts. We only assume for the purposes of this decision that a distinction does exist because we do not believe that *Roberts* stands for the general proposition that evidence of reliability may be inferred under all exceptions to the rule against hearsay, including Rule 804(b)(5).

▪ Although the Court has chosen to proceed with this issue on a case-by-case basis, we do not believe that any of its prior holdings require a reversal on these facts. The introduction of Iantha Humphries' grand jury testimony did not violate the appellant's sixth amendment right to confrontation. In particular, we do not consider cross-examination of the declarant a prerequisite to a statement's admission under the confrontation clause. *See United States v. West,* 574 F.2d at 1137. The more controlling concern is the reliability of the statement. The confrontation clause is to "advance a practical concern for the accuracy of the truth determining process in criminal trials by assuring that the 'trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.'" *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (quoting *California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970)).

The leading case in which the Supreme Court has permitted the use of hearsay testimony which was not previously cross-examined is *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). In this case a co-conspirator of the defendant told a fellow prisoner that the defendant was to blame for their predicament. The jury was to infer from the co-conspirator's statement that the defendant was the perpetrator of the offense. Critical to the plurality's conclusion was that the statement, although given by a co-conspirator who could not be cross-examined, was inherently reliable. The declarant's statement was not an assertion of past fact; it was an opinion. Therefore, there was a warning on the face of the statement as to the weight to be given it. Also, the declarant's personal knowledge was plainly established by other testimony at trial and it was unlikely that the state-

---

**7.** One commentator, in offering a practical analysis to confrontation questions, acknowledged before the Court rendered its opinion in *Roberts* that it might "dispose of [the case] narrowly, perhaps on the ground that the defendant's direct examination of Anita Isaacs was comparable to the cross examination in *Green.*" Westen, *The Future of Confrontation,* 77 Mich.L.Rev. 1185, 1214 (1979) (footnote omitted). This prediction appears to have been accurate. We do not read *Roberts* broadly.

**8.** This residual exception to the rule against hearsay is of recent origin. In *Dallas County v. Commercial Union Assurance Co.,* 286 F.2d 388 (5th Cir.1961), the court allowed introduction of a sixty-year-old newspaper article on general principles of trustworthiness. Inclusion in the Federal Rules of Evidence of what is now Rule 803(24) and Rule 804(b)(5), which contain identical language, was premised on *Dallas County* and was by no means unchallenged. H.R.Rep. No. 1597, 93rd Cong., 2d Sess. ——, *reprinted in* 1974 U.S.Code Cong. & Ad.News 7051, 7106; S.Rep. No. 1277, 93d Cong., 2d Sess. ——, *reprinted in* 1974 U.S.Code Cong. & Ad.News 7051, 7065–66. *See also United States v. Carlson,* 547 F.2d at 1356 (citing 5 *Wigmore on Evidence* § 1426 (Chadbourn rev. 1940)); J. Weinstein & M. Berger, *Weinstein's Evidence* ¶¶ 803(24)[01], 804(b)(5)[01] (1981).

ment was based on faulty recollection. Finally, the surrounding circumstances gave no reason to suppose that the declarant misrepresented the defendant's involvement in the crime. These factors were deemed to be sufficient "indicia of reliability." 400 U.S. at 88–89, 91 S.Ct. at 219; *See United States v. Perez,* 658 F.2d 654, 661 (9th Cir. 1981).

We do not regard the issue before this court as significantly different from the one in *Dutton.* The statement in the instant case, Iantha Humphries' claim that the appellant was not with her on the evening of the theft, was plainly an assertion of past fact. This information, however, was within her personal knowledge. In addition, other evidence at trial corroborated the statement that the appellant was elsewhere and the likelihood that Ms. Humphries' recollection was faulty is clearly remote. Given the events of the days surrounding the theft she undoubtedly would have recalled whether the appellant was with her on the night in question. Moreover, the circumstances of the statement

give no indication that she would have lied as to the appellant's whereabouts. She had been given immunity from prosecution in exchange for her testimony which should have encouraged her to be forthright with the grand jury. Although immunity might prompt some witnesses to embellish their story, it is doubtful that Ms. Humphries would have done so at the expense of her boyfriend.[9] Also, the government was by no means responsible for the witness' absence. *See, e.g., Ohio v. Roberts,* 448 U.S. at 79–80, 100 S.Ct. at 2545–2546 (Brennan, J., dissenting).

We therefore hold that the introduction of grand jury testimony on these facts does not violate a defendant's sixth amendment right to confrontation.[10]

## IV.

The final issue on this appeal involves the trial court's denial of the appellant's motion for a new trial. Appellant Barlow based his motion on newly discovered evidence, a letter from his co-defendant, Lewis Wil-

9. The trial procedure of this case also ensured the reliability of the statement. Ms. Humphries was available for live testimony in the companion case against co-defendant Williams. Therefore, the trial judge had the opportunity to observe her demeanor and assess the truthworthiness of her entire testimony. From these observations he could also determine the likelihood of her grand jury testimony being truthful.

10. In order to reach the confrontation clause question, the grand jury testimony first must be admissible under Rule 804(b)(5) as discussed in part III–A of this opinion. Therefore, many of the "particularized guarantees of truthworthiness" required by *Roberts* are ensured by the threshold evidentiary question. As discussed in the text, it would appear from the analysis of this case that Rule 804(b)(5) and the confrontation clause are functional equivalents. This conclusion, however, is too broad and illustrates the need for a comprehensive confrontation clause analysis which the Supreme Court has been unable to articulate.

We agree that while "hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of

hearsay and their exceptions as they existed historically at common law." *California v. Green,* 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970). On the other hand, there are occasions, such as the instant case, in which the rules of evidence provide more than enough protection for the defendant and no confrontation issue is actually present. The most persuasive analysis we have reviewed is Justice Harlan's theory which he announced in his concurring opinion in *California v. Green,* 399 U.S. 149, 172–89, 90 S.Ct. 1930, 1942–1951, 26 L.Ed.2d 489 (1970), yet repudiated six months later in *Dutton v. Evans,* 400 U.S. 74, 93–100, 91 S.Ct. 210, 221–225, 27 L.Ed.2d 213 (1970). *See* Westen, *The Future of Confrontation,* 77 Mich.L.Rev. 1185 (1979). Justice Harlan concluded that the sixth amendment requires no more of the prosecution than "to *produce* any *available* witness whose declarations it seeks to use in a criminal trial." 399 U.S. at 174, 90 S.Ct. at 1943 (emphasis original). On the facts of the case at bar our inquiry would be limited. Because Ms. Humphries was not an available witness, the government had no duty to produce her in order to protect the defendant's sixth amendment right of confrontation. She was not a "witness against" the defendant within the meaning of the amendment.

liams, stating that Barlow had nothing to do with the fur theft. Williams accepted all of the responsibility for the plan and its execution.

 Under Rule 33 of the Federal Rules of Criminal Procedure a defendant is entitled to a new trial "if required in the interest of justice." Fed.R.Crim.P. 33. Such decisions are addressed to the sound discretion of the trial judge whose decision is not to be disturbed absent a showing of abuse of discretion. *United States v. Metz,* 652 F.2d 478, 479 (5th Cir.1981); *United States v. Hoffa,* 382 F.2d 856, 862 (6th Cir.1967), *cert. denied,* 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968). In making a motion for a new trial based on newly discovered evidence the defendant must show that the evidence (1) was discovered only after trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal if the case were retried. *United States v. Hedman,* 655 F.2d 813, 814 (7th Cir.1981); *United States v. Garner,* 529 F.2d 962, 969 (6th Cir.), *cert. denied,* 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 124 (1976). As the district court noted, the evidence in question meets the first three criteria. Therefore, the issue is whether the trial court's finding that the new evidence would not result in an acquittal was an abuse of discretion. We find that it was not.

The trial court held a hearing on this motion for a new trial at which Lewis Williams testified about the events as he described in his letter to Gaynell Humphries. In ruling on the motion the district judge found Williams' testimony to lack credibility because of its limited nature and the ease with which he could construct a set of facts to leave appellant Barlow out of the conspiracy. The trial court also emphasized that the newly discovered evidence conflicted with Gaynell Humphries' testimony which the court described as the most credible it "ever heard in this kind of offense."

We believe that the record amply supports the decision of the court below which certainly does not amount to an abuse of discretion.

The judgment of the district court is AFFIRMED.