**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lynn WHITE, Defendant–Appellant.**

**No. 87–6287.**

United States Court of Appeals,
Sixth Circuit.

Argued July 19, 1988.

Decided Nov. 23, 1988.

Before MERRITT, KRUPANSKY and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Defendant-appellant T. Lynn White (White) appeals the district court order denying his motion for a new trial based on newly discovered evidence. On October 31, 1984, a grand jury returned a two-count indictment against White, Troy L. Castile, James Brown, and Mark Shelton, charging them with conspiring to interfere with the housing rights of Richard E. Woods and his family, who are black citizens of the United States, and with aiding and abetting each other, in violation of 18 U.S.C. §§ 241 and 2, and 42 U.S.C. § 3631. Defendants Brown and Shelton entered guilty pleas pursuant to plea agreements, and agreed to testify against White and Castile in the January 1985 jury trial. Evidence at trial indicated that White bore a strong prejudice against blacks, and had even stated, prior to the crime, that "if that black son of a bitch built ... across the street from me I'd burn it down."

On January 17, 1985, a jury convicted White and Castile on both counts in the indictment. On February 22, 1985, the district court sentenced each of these defendants to four years' imprisonment, to be followed by three years of probation on the conspiracy count, and imposed concurrent sentences of one year of imprisonment for each defendant on the aiding and abetting charge. This court affirmed White's convictions. *United States v. White*, 788 F.2d 390 (6th Cir.1986).

On September 18, 1986, White moved for a new trial in the district court on the basis of newly discovered evidence. The "newly discovered evidence" consisted of allegations that government prosecutors had made oral promises to co-defendant Shelton that were not disclosed to the court when Shelton entered his guilty plea and not disclosed to White during pre-trial discovery. White argued that the government failed to disclose a promise to write a letter on Shelton's behalf to the parole commission documenting Shelton's cooperation, and a promise to handle an unrelated civil rights complaint on Shelton's behalf.

Charles D. Susano, Jr. (argued), Bernstein, Susano and Stair, Knoxville, Tenn., for defendant-appellant.

Michael J. Gennaco, Criminal Section, Dept. of Justice, Civ. Rights Div., Washington, D.C., Louise A. Lerner (argued), for plaintiff-appellee.

White argued that these alleged oral commitments directly affected Shelton's credibility, and that therefore the government's failure to disclose these commitments required a new trial. The government denied that any undisclosed commitments had been made to Shelton. White further argued that since government prosecutors testified that no promises requiring disclosure under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), had been made, the government had committed perjury. On November 4, 1986, the district court, without a hearing, denied White's motion for a new trial.

On August 10, 1987, White appealed to this court. In *United States v. White,* 826 F.2d 1066 (6th Cir.1987), this court directed the district court to hold an evidentiary hearing to determine whether the evidence supporting White's motion met the test outlined in *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985), and *United States v. O'Dell,* 805 F.2d 637, 640 (6th Cir.1986).

On November 9, 1987, the district court conducted an evidentiary hearing. The court found that "there were no commitments made by the government related to Mr. Shelton's change of plea or his agreement to testify which were not disclosed to the Court and to the defense in this case." The court found further that "considering all the impeaching evidence proffered at trial, even if the jury had been advised that Mr. Shelton believed he was [made the alleged promises], this would not have in any way affected [the jury's] judgment of his credibility, or the outcome of the trial." For the reasons set forth below, we affirm.

**I**

Decisions as to whether a defendant is entitled to a new trial are " 'addressed to the sound discretion of the trial judge' " whose decision is not to be disturbed absent a showing of abuse of discretion. *United States v. Barlow,* 693 F.2d 954, 966 (6th Cir.1982) (citations omitted). Generally, a trial court's findings of fact are not set aside unless clearly erroneous. Fed.R. Civ.P. 52(a); *Anderson v. City of Bessem-*

*er,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ White maintains on appeal that government prosecutors promised to write a letter to the United States Parole Commission documenting Shelton's cooperation in the case against White. As stated above, the district court found that no promise had been made by government prosecutors to write such a letter. We must review this factual finding under the "clearly erroneous" standard. *Ibid.*

At the hearing on the new trial motion, Shelton reaffirmed an earlier statement that prosecutors Haynes and Baxter told him that they would write a letter of cooperation on his behalf to the United States Parole Commission. Shelton's attorney, Mr. Ron Smith, testified that his client in fact requested such a letter, and that, based on a conversation with Haynes, Shelton and Smith understood such a letter would be written if Shelton testified, but that no such letter was ever written. The record shows, however, that Smith had no recollection of any specific instance in which prosecutor Haynes "opened his mouth and said [that he would] write such a letter."

Prosecutor Haynes testified that he never agreed to write a letter of cooperation to the Parole Commission on Shelton's behalf. Haynes testified, however, that he told Mr. Lynn, Shelton's probation officer, that "it needed to be brought to the attention of the prison authorities about [Shelton's] cooperation so that they would be aware of that in segregating or protecting him from any reprisal." This testimony was corroborated by Mr. Lynn.

It is true that Haynes's testimony reveals that at some point Shelton and Smith requested a letter documenting Shelton's cooperation for the purpose of getting leniency in sentencing. Haynes's testimony indicates that this change in focus (from the United States Parole Commission to leniency in sentencing) occurred after the entry of Shelton's guilty plea, and was not part of the negotiations concerning that plea. Thus, the district court's finding that

no agreement had been made to write a letter on Shelton's behalf to the United States Parole Commission is not clearly erroneous.

## II

Shelton next argues that the government agreed to handle a civil rights complaint, the allegations of which were unrelated to the charges of arson in the instant case, on his behalf as part of the negotiations leading to his entry of a guilty plea. At the hearing on the new trial motion, Shelton reaffirmed an earlier statement that Mr. Rowe, a Justice Department attorney, and Childress, a former FBI agent, told him they would investigate a civil rights complaint concerning charges against Shelton based on the shooting of a Knox County deputy. In that complaint, Shelton alleged that he had been "set up," and was innocent of any wrongdoing in connection with the shooting. Shelton was convicted of assault with intent to commit second-degree murder for this shooting, and received a four-year prison sentence, to run concurrently with an eight-year sentence for possession of burglary tools.

Smith, Shelton's lawyer, testified that the government attorneys "agreed to take [Shelton's civil rights] complaint, and ... even instructed him on how to file such a complaint and explained somewhat the machinery." Based on our review of the records, Smith's testimony is crystal clear that there was no "quid pro quo" in exchange for Shelton's testimony against White, and that the handling of the civil rights complaint was a separate matter rather than part of the plea agreement.

Rowe essentially testified that Shelton was told that he could file a civil rights complaint with an FBI agent, as any other citizen could, and that no particular result was guaranteed. Prosecutor Haynes also essentially testified that Shelton was told that he would be able to file a civil rights suit as would any other citizen. FBI agent Childress testified that he took Shelton's civil rights complaint, referred it to the proper authorities, and that was the end of it. Smith testified that he and Shelton discussed the civil rights complaint with Childress, but Childress was "encouraging, but noncommittal."

We hold that where the government's conversations with a plea bargainer do not amount to a promise of treatment beyond that extended to any other person, no promise cognizable under *Brady* has been made to the plea bargainer, and thus there is no duty to disclose such discussions to the defense or to the court. The subjective reaction of the plea bargainer to the knowledge that he or she may file a court paper or document as any other citizen could is irrelevant. Thus, we uphold the district court's conclusion that no agreement had been made to handle a civil rights complaint on Shelton's behalf.

## III

Shelton argues on appeal that this court should focus on what he perceives as "false testimony." We have already indicated, however, that none of the alleged promises had in fact been made to Shelton by government prosecutors. We thus reject the argument that the government proffered "false testimony" to the court when it indicated at the plea hearing, and in pre-trial discovery responses, that all commitments to Shelton had been disclosed to the defense and to the court. The district court correctly stated that there was "absolutely no indication that the government relied upon false testimony."

Since there was no false testimony by the government, the appropriate test for measuring the effect of the alleged newly discovered evidence in the instant case is set forth in *United States v. Barlow*, 693 F.2d 954 (6th Cir.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983).

In making a motion for a new trial based on newly discovered evidence the defendant must show that the evidence (1) was discovered only after trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would

likely produce an acquittal if the case were retried.

*Id.* at 966 (citations omitted).

Applying *Barlow,* the district court held that "considering all the impeaching evidence proffered at trial, even if the jury had been advised [of Shelton's belief], this would not have in any way affected [the jury's] judgment of his credibility, or the outcome of the trial." We agree with the district court. At most, the newly discovered evidence can be characterized as Shelton's belief that he had been promised a letter from the government prosecutors to the United States Parole Commission, documenting his cooperation, and his belief that his civil rights complaint would be given some sort of special treatment beyond that accorded any other citizen. Moreover, the record shows that the jury had been notified that Shelton had eight prior felony convictions, including convictions for theft, attempted burglary, receiving stolen property, extortion, assault with intent to rob, possession of burglary tools, and assault with intent to commit murder of a law enforcement official. Additionally, the jury learned that Shelton was then serving a ten-year federal sentence, which was to be followed by an eight-year state sentence. The jury was also apprised that Shelton's guilty plea was in return for concurrent sentences, and that he thus received no "new time" based on his guilty plea.

When this impeachment evidence is evaluated in the context of the entire record, it is apparent that, had the jury been advised of Shelton's subjective beliefs about the alleged government promises, it would not have in any way affected the jury's judgment of Shelton's credibility, or the outcome of the trial. Thus, the third and fourth elements of the *Barlow* test have not been met, and the district court's decision to deny White a new trial is correct. Therefore, the district court order denying Shelton's motion for a new trial based on newly discovered evidence must be AFFIRMED.