946 F.2d 896
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Corinthur RODDY, Defendant-Appellant.
 No. 91-3187.
 United States Court of Appeals, Sixth Circuit.
 Oct. 7, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and ROSEN, District Judge*.
 PER CURIAM.
 
 
 1
 Defendant Corinthur Roddy appeals the denial of his motion for a new trial which alleged that newly discovered evidence bearing on his guilt or innocence had come to light. The sole issue in this case is whether or not the district court abused its discretion in overruling defendant's motion for a new trial. For the reasons that follow, we affirm.
 
 I.
 
 2
 On April 18, 1988, the B. F. Goodrich Federal Credit Union in Twinsburg, Ohio, was robbed. Defendant Roddy was arrested on the same day, and some of his clothing was taken by agents of the Federal Bureau of Investigation and sent to an FBI laboratory. At the laboratory, defendant's clothing was compared visually with the clothing worn by the bank robber, as depicted in the photographs taken by the credit union's surveillance cameras. Federal agents also lifted latent fingerprints and palmprints at the scene of the crime and forwarded them to an FBI laboratory for comparison purposes. The FBI laboratories were unable to determine that any of the clothing seized had been worn by the bank robber. The latent fingerprints taken did not match those of defendant and were never identified.
 
 
 3
 Defendant was tried twice. His first trial in July 1988 ended in a mistrial because of a hung jury. His second trial in October 1988 resulted in his conviction of armed bank robbery. At both trials, defendant was represented by Attorney Clarence D. Rogers, Jr. Approximately two months after defendant's conviction, Rogers withdrew as defendant's attorney, and Richard Drucker filed a notice of appearance on behalf of defendant. Attorney Drucker has apparently represented defendant in all proceedings subsequent to the trials, including the proceeding on the motion for new trial and this appeal.
 
 
 4
 On January 18, 1991, defendant filed the motion for new trial at issue in this case. The district court conducted a hearing on February 6, 1991, and denied the motion. This timely appeal followed.
 
 II.
 
 5
 The scope of review in a case such as this is limited.
 
 
 6
 Motions for a new trial based on newly discovered evidence are disfavored, and a trial court's determination that a new trial is not warranted will not be reversed absent "clear abuse of discretion." United States v. Allen, 748 F.2d 334, 337 (6th Cir.1984) (per curiam)....
 
 
 7
 United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986), cert. denied, 484 U.S. 859 (1987); United States v. White, 861 F.2d 994, 996 (6th Cir.1988).
 
 
 8
 The appropriate test for determining whether to grant a motion for a new trial based on newly discovered evidence is found in United States v. Barlow, 693 F.2d 954, 966 (6th Cir.1982), cert. denied, 461 U.S. 945 (1983), where this court stated that
 
 
 9
 [i]n making a motion for a new trial based on newly discovered evidence the defendant must show that the evidence (1) was discovered only after trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal if the case were retried.
 
 
 10
 Defendant notes that Rule 16(a)(1)(D), Federal Rules of Criminal Procedure, requires the government's attorney to permit a defendant to inspect and copy results or reports of scientific tests or experiments. Defendant then alleges that, as a matter of pretrial discovery, he was not furnished with the report of an FBI test comparing the robber's clothing, as depicted in the credit union's surveillance photographs, with certain items of clothing taken from defendant and his residence. Specifically, defendant insists that the FBI comparisons determined that a shirt, taken from defendant's residence, was not the shirt worn by the robber and that this definitive test result was never furnished to the defendant in the discovery process. Brief of Appellant at 12. Thus, the new evidence allegedly discovered by defendant is best characterized either as a previously undetected violation of Rule 16 by the government or the suppression of exculpatory evidence by the government in violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.
 
 
 11
 The government responds by insisting that the FBI report in question "was given to defense counsel as part of discovery before the first trial." Brief of Appellee at 7. From the record, it does appear that the government properly furnished defendant's attorney, Mr. Clarence Rogers, with the FBI's report of comparison and that the report specifically states:
 
 
 12
 The K7 beige shirt was examined and compared with the questioned shirt depicted in the selected frames from Q1. It was determined that K7 is not the shirt depicted on the suspect individual in the Q1 surveillance film.
 
 
 13
 Id. At defendant's first trial in July 1988, the following testimony and discussion occurred:
 
 
 14
 Q. So did you send clothing to the lab in Washington D.C.?
 
 
 15
 A. Yes, sir, I sent the items of clothing which members of the jury have seen throughout this trial as well as the negative film from this camera.
 
 
 16
 Q. And did you receive a report of that finding?
 
 
 17
 A. Yes, sir, I did.
 
 
 18
 Q. Was there any positive findings in that report?
 
 
 19
 A. The laboratory advised in their report that--
 
 
 20
 Mr. Rogers: Your Honor, may we approach?
 
 
 21
 The Court: Yes.
 
 
 22
 (Following discussion had at side bar.)
 
 
 23
 Mr. Rogers: My concern is this is the lab report that I received.
 
 
 24
 Mr. Bauer: That's all there is. Negative. Neutral testimony.
 
 
 25
 Mr. Rogers: I didn't want to blurt it out.
 
 
 26
 Mr. Bauer: No, nothing. No surprises.
 
 
 27
 The Court: Okay.
 
 
 28
 (End of side bar conference.)
 
 
 29
 Tr. of Trial, Vol. II, p. 227. This excerpt shows that Mr. Rogers directly referred to the laboratory report under discussion between Agent White and Mr. Bauer, the government's attorney, as "the lab report that I received." Thus, he must have had it. Further, it is almost inconceivable that Rogers would not have objected to the contents of an unfamiliar report coming into evidence in the government's case-in-chief. That he made no objection is additional circumstantial evidence that he already had the report, as he seemed to admit.
 
 
 30
 In an attempt to discover whether Mr. Rogers received the laboratory report, the district court recessed its hearing on defendant's motion for a new trial while defense counsel and the government's attorney telephoned Mr. Rogers. According to defense counsel, Rogers stated that "he was never told about a shirt." On the other hand, the government's attorney described the laboratory report and insisted that it had been furnished to Rogers in its entirety prior to defendant's first trial.
 
 
 31
 Rather than resolving this factual dispute through testimony, the district court ruled as follows:
 
 
 32
 The fact that they picked up a shirt which was not identified as being the shirt that was depicted in the photograph ... is not necessarily exculpatory in and of itself....
 
 
 33
 Thus, whether counsel knew or did not know that the beige shirt was not identified does not make this a new evidence circumstance, nor does it make it a problem ... of exculpatory evidence being turned over to the defendant.
 
 
 34
 Motion Hearing, Tr. p. 17. Thus, the district court ruled that the laboratory's conclusion concerning the beige shirt was immaterial to defendant's case.
 
 
 35
 It does not matter that one shirt taken from defendant's home did not match the shirt worn by the robber. The provisions of Rule 16(a)(1)(D) allow defense discovery of government test results "which are material to the preparation of the defense" (emphasis added), and part of the test established in Barlow for granting a new trial is that the newly discovered evidence be "material and not merely cumulative." 693 F.2d at 966. Thus, even if this evidence should have been, but was not, provided to the defendant as a matter of discovery, it is cumulative at best and therefore does not furnish a ground for a new trial.
 
 
 36
 As to defendant's contention that production of this evidence was required by Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court has announced a
 
 
 37
 test for materiality sufficiently flexible to cover the "no request," "general request," and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.
 
 
 38
 United States v. Bagley, 473 U.S. 678, 682 (1985).
 
 
 39
 The negative identification evidence respecting the beige shirt was not material to the defense for purposes of Rule 16(a)(1)(D), and the failure to disclose the report, assuming one occurred, could not reasonably have affected the result of this trial. Therefore, the government violated neither the discovery rule nor the Brady rule, and the district court did not abuse its discretion in denying defendant's motion for new trial on those grounds.
 
 
 40
 Defendant also argues that a separate FBI test report sent by the FBI laboratory to the case agents and government's attorney contained the following statement: "The major case prints are being searched through our Identification Division files. You will be advised of the result of this search separately." Defendant insists that "this means that the latent prints were subsequently examined but the results of this examination has [sic] never been revealed to the Appellant. A match could reveal the true identity of the robber. This potentially exculpatory evidence has never been disclosed." Brief of Appellant at 12.
 
 
 41
 Apparently, defendant thinks that the FBI laboratory has engaged in a search of its millions and millions of files to determine the identity of the person or persons whose latent fingerprints were lifted in the credit union. This is nonsense, according to the government, because the "major case prints," to which the report refers, are the inked prints taken from the defendant upon his arrest. The statement in the laboratory report, therefore, meant that the defendant's known fingerprints would be checked against unidentified latent prints from other bank robberies to see if, perhaps, defendant could be linked to other robberies. Motion Hearing, Tr. pp. 10-11.
 
 
 42
 The district court addressed defendant's argument, even though it was based on a misreading of the laboratory report, and stated as its ruling:
 
 
 43
 The fact that the [latent] print was not identified as being someone else's print, I think, cannot be a mandatory qualification. Were it so, in every case the government would have the burden of proving from the standpoint of some exculpatory basis the identity of the person who left the print. Sometimes, indeed most times, this is not possible to do.
 
 
 44
 Motion Hearing, Tr. p. 17. Defendant cites no authority to support his argument that the government must pursue to exhaustion the identification of every latent fingerprint it takes. Indeed, this is absurd. The fact that the government has not positively identified the latent fingerprints it lifted in the credit union cannot furnish grounds for a new trial, and the district court correctly said so.
 
 III.
 
 45
 Defendant has not carried his burden of establishing the existence of newly discovered evidence, particularly in view of the trial transcript in this case. If there was a discovery breakdown in this case, there is no reasonable probability that it could have affected the outcome of the case. Accordingly, the district court's order denying defendant's motion for a new trial is AFFIRMED.
 
 
 
 *
 Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation