852 F.2d 569
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Earl MILLER, Defendant-Appellant.
 No. 87-1126.
 United States Court of Appeals, Sixth Circuit.
 July 18, 1988.
 
 Before WELLFORD and ALAN E. NORRIS, Circuit Judges and R. ALLAN EDGAR*, District Judge.
 PER CURIAM.
 
 
 1
 Appellant James Earl Miller appeals from his conviction for conspiracy to distribute controlled substances, distribution of dilaudid, aiding and abetting, and illegal use of a DEA registration number issued to another person. Miller's conviction was based upon his operation of a purported "clinic" from which he dispensed drug prescriptions while claiming to be a physician. He challenges his conviction on two grounds. First, he contends that the district court erroneously declared a prosecution witness, Eva Tinsley, unavailable and admitted her prior grand jury testimony in violation of the sixth amendment's confrontation clause. Second, he argues that he was denied effective assistance of counsel, although he insisted on representing himself at trial. We affirm.
 
 
 2
 On June 13, 1985, shortly after the indictment was filed, the district court authorized a magistrate to appoint standby counsel for Miller. The magistrate had a hearing on July 26, 1985, during which Miller repeatedly asserted his wish to represent himself and refused standby counsel despite the magistrate's efforts to the contrary. Miller indicated his distrust of appointed lawyers and his own familiarity with the federal courts. The government attorney had suggested standby counsel for Miller. After dismissal of the original indictment, a superseding indictment charging Miller and the same co-defendant with the crimes for which Miller was ultimately convicted was filed on August 22, 1986.[1] A further hearing was held before the district court on November 6, 1986 to determine whether Miller would have appointed counsel, standby counsel, or would represent himself. At that hearing, Miller again adamantly refused appointment of counsel to assist him, insisting that he wanted to represent himself despite the district court's warning of the risks and disadvantages involved. Finally, despite Miller's objection, the district court appointed standby counsel for him.
 
 
 3
 When jury selection commenced, Miller questioned the appointed counsel's presence, reiterating his desire to represent himself. As trial was beginning, in light of appellant's protestations, the district court excused the appointed counsel following yet another unsuccessful attempt to persuade Miller, finding that Miller "knows all the risks and has made a conscious decision that he wants to go it alone." At trial, Miller actively participated, giving an opening statement and closing argument, cross-examining prosecution witnesses, and making objections.
 
 
 4
 An undercover agent purchased prescriptions on several occasions through Miller's co-defendant, who obtained the prescriptions from his "contact" at a location subsequently determined to be Tinsley's home where Miller resided from time to time. The agent also purchased prescriptions through one Jackie Graham from a man she referred to as "Earl," who gave her the prescription from an automobile later seen outside of Tinsley's home. The purchase from Graham took place in close proximity to 8837 Gratiot Avenue, Detroit, Michigan.
 
 
 5
 The prescriptions sold to the undercover agent were in the name of Eastern Medical Clinic with an address of 8837 Gratiot Avenue, Detroit, Michigan 4813, with a clinic phone number of 924-7220, and were signed with a signature purporting to be that of Keith H. Burch with a DEA registration number of AB5230432. Dr. Keith Burch testified that his DEA number as a medical doctor was AB5230432, but that he was never at any time associated with the Eastern Medical Clinic, that the signature on the alleged prescriptions using his name was a forgery, and that he had authorized no one else to use his name or DEA number.
 
 
 6
 A search at Tinsley's home yielded a variety of items: $11,080 in cash with a divider card attached to it marked "clinic"; Eastern Medical Clinic prescription forms both blank and signed Keith H. Burch; a rent receipt to J. Miller for 8837 Gratiot Avenue; telephone bills for the Eastern Medical Clinic; and handwriting scribbles purporting to be signature of Keith H. Burch. An FBI fingerprint specialist identified Miller's fingerprints on the divider card and on a blank prescription form. A questioned document examiner identified the purported signature of Keith H. Burch on various of the prescriptions to be in Miller's handwriting.
 
 
 7
 Telephone records linked a person calling himself Dr. James Miller to various "clinic" telephone numbers, including the number printed on the prescriptions involved. Owners of the 8837 Gratiot Avenue property and other addresses where "clinic" telephones were installed testified that the properties, or "storefronts," were rented to James Miller or "Earl." Another witness testified that appellant paid her for months at a time during the period 1983-1985, to answer her residential telephone in the name of "Eastern Medical" or "Ballard Medical" to verify prescriptions.
 
 
 8
 Tinsley, after previously testifying before the grand jury, was called by the government to testify. Unsuccessful attempts initially were made to elicit Tinsley's testimony, during which she made accusatory statements and repeatedly responded "I don't know" to questions posed by the government regarding the items found in her home. She ultimately was found in contempt of court. During this confrontation, Miller encouraged Tinsley to "give'em hell."
 
 
 9
 Finally, Tinsley was called to the stand, outside the jury's presence, and questioned by the court to determine the availability of her live testimony. Again, Tinsley responded to most questions, "I don't recall," or used words to this effect. Miller was given the opportunity to examine Tinsley as to her recollection, but chose only to ask her if she had been mailed a copy of her grand jury testimony. The district court then found that Tinsley "either suffers from a lack of recall or is deliberately dissembling" and consequently found her to be unavailable as a witness. The district court then allowed Tinsley's grand jury testimony to be read to the jury, finding that it had the "equivalent circumstantial guarantees of trustworthiness" because Tinsley was then under oath, had been granted immunity, testified to matters within her personal knowledge, and her testimony was corroborated by other witnesses. The court also noted Tinsley's close, personal relationship with Miller, and concluded that the grand jury testimony offered a "trustworthy understanding [of] her motivation for testifying and the extent of her personal knowledge." Prior to the reading of the grand jury testimony,[2] the court explained to the jury the circumstances under which the testimony was given and which lead up to its reading, and instructed the jurors to weigh it and assign it such credibility as they felt appropriate.
 
 
 10
 Tinsley's grand jury testimony was damaging to Miller and established that Miller stayed with her in her home from time to time and kept certain personal items there. She claimed, however, that the substantial amount of cash in her home was her "life savings" and denied knowledge of a divider card marked "clinic" attached to the money. She acknowledged that Miller had kept blank prescription forms in her home, however, and had maintained a separate telephone line from her home. She also testified that when Miller was not there, calls on his phone were forwarded elsewhere, and that Miller had given her prescriptions. Tinsley also testified that she loved Miller.
 
 
 11
 I. Was the district court in error in finding Tinsley to be unavailable as a witness under Fed.R.Evid. 804(a)?
 
 
 12
 Fed.R.Evid. 804 provides in pertinent part:
 
 
 13
 (a) Definition of unavailability. "Unavailability of a witness" includes situations in which the declarant--
 
 
 14
 (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
 
 
 15
 (3) testifies to a lack of memory of the subject matter of the declarant's statement....
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrong doing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.
 
 
 19
 Although Tinsley did not specifically refuse to testify, the district court, which had the opportunity to observe her behavior, concluded that she suffered either an actual (804(a)(3)) or feigned (804(a)(2)) loss of memory. Miller contends that Tinsley simply had difficulty recalling specific events. He also acknowledges that she "was obviously confused, agitated and somewhat argumentative" in his brief.
 
 
 20
 The parties agree that the district court's finding of Tinsley's unavailability was factual in nature and should be reviewed under the "clearly erroneous" standard. The determination of a witness's unavailability appears to be a finding of fact preliminary to the admissibility of evidence, based upon circumstances and events which the district court has the opportunity to observe first hand. A claimed lack of memory and refusal to testify have been upheld as grounds for determining unavailability under Rule 804(a). See, e.g., United States v. Garner, 574 F.2d 1141 (4th Cir.), cert. denied sub nom., McKethan v. United States, 439 U.S. 936 (1978); United States v. Hughes, 411 F.2d 461, 466 (2d Cir.), cert. denied, 396 U.S. 867 (1969).
 
 
 21
 Tinsley took the stand and was subjected to both direct and cross examination (albeit limited by Miller's choice) during the hearing to determine her availability as a witness. The district court had ample opportunity to assess her credibility and demeanor. There is no indication that the government procured her unavailability. We find no clear error, as claimed by appellant, in the determination of unavailability as to witness Tinsley in this case.
 
 
 22
 II. Did the district court abuse its discretion in admitting Tinsley's grand jury testimony under Fed.R.Evid. 804(b)(5)?
 
 
 23
 Once a declarant is declared unavailable, Rule 804(b)(5) permits as evidence statements which would otherwise be excluded by the hearsay rule if they have circumstantial guarantees of trustworthiness, and if the trial court finds that they are offered to prove a material fact and are more probative than other evidence obtainable through reasonable efforts.[3] Advance notice of the intent to use such evidence is required.
 
 
 24
 This court in United States v. Barlow, 693 F.2d 954 (6th Cir.1982), cert. denied, 461 U.S. 945 (1983), articulated factors to be considered in determining whether statements have equivalent circumstantial guarantees of trustworthiness: (1) the relationship between the witness and the government; (2) the witness's motive for testifying; (3) whether the testimony was from personal knowledge; (4) whether the testimony had been recanted; (5) whether the testimony was corroborated; (6) the extent of the defendant's role in making the witness unavailable (even if insufficient to amount to a waiver of sixth amendment confrontation rights); and (7) whether the subject matter of the testimony was critical to the prosecution's case.
 
 
 25
 In the present case, Tinsley testified before the grand jury under grant of immunity; she therefore had little motive to implicate her boyfriend and to exculpate herself. Her testimony concerned matters of which she had personal knowledge; that is, Miller's relationship with her and the location of certain items in her home. Tinsley was careful to indicate when she had no knowledge of the information called for by a question posed to her before the grand jury. She never recanted her testimony and it was corroborated by the other testimonial and physical evidence. Miller's actions while Tinsley was on the witness stand during his trial indicate that he played a role in making her unavailable. Tinsley's evidence, while important, was certainly not critical proof of guilt but added support to the web of circumstantial evidence already encompassing Miller. These same factors, as noted in Barlow, were ample bases for the district court to conclude that the grand jury testimony "satisfied all of the requirements of Rule 804(b)(5) and therefore was properly admitted under the rules of evidence." Barlow, 693 F.2d at 954.
 
 
 26
 In addition to challenging the trustworthiness of Tinsley's testimony, Miller implicitly asserts that he failed to receive adequate notice that the grand jury testimony would be used at trial. As noted in United States v. Carlson, 547 F.2d 1346, 1355 (8th Cir.1976), cert. denied, 431 U.S. 914 (1977), the notice requirement "should not be an inflexible and imposing barrier to the admissibility of probative evidence." In the present case, as in Carlson, the defendant was supplied with a copy of the grand jury testimony before trial and had knowledge of its substance. The government apparently had no advance indication that Tinsley would refuse to testify or would suffer a "loss of memory." Under these circumstances, with Carlson as authority, we conclude that it was not error to admit the testimony despite the failure of the government to provide Miller with formal pretrial notice that it intended to introduce it.
 
 
 27
 The district court did not abuse its discretion under Rule 804(b)(5) by admitting Tinsley's grand jury testimony.
 
 
 28
 III. Did the district court violate Miller's right to confrontation?
 
 
 29
 Miller claims a lack of opportunity to cross-examine Tinsley regarding the substance of her testimony. We have, however, held that "cross-examination of the declarant [is not] a prerequisite to a statement's admission under the confrontation clause." Barlow, 693 F.2d at 964. The burden is upon the prosecution to demonstrate that the witness is unavailable. Ohio v. Roberts, 448 U.S. 56 (1980); Mancusi v. Stubbs, 408 U.S. 204 (1972). Absent evidence that the defendant procured the witness's unavailability, the government as proponent must show "particularized guarantees of trustworthiness", or that the statements possess "adequate 'indicia of reliability'." Barlow, 693 F.2d at 963 (quoting Roberts, 448 U.S. at 66).
 
 
 30
 Much of the Rule 804 analysis presented above is applicable to this contention. There is no evidence that the government played a part in making Tinsley unavailable. In fact, the prosecution made every effort to elicit Tinsley's live testimony. On the other hand, there is no evidence that Miller actually threatened Tinsley, but it could be inferred that he indirectly procured her "loss of memory" or refusal to testify by his actions and because of their longstanding past relationship.
 
 
 31
 The question in addressing the confrontation challenge is whether particularized guarantees of trustworthiness were shown for Tinsley's grand jury testimony that "afforded 'the trier of fact a satisfactory basis for evaluating the truth of the prior statement'." Mancusi, 408 U.S. at 216 (citation omitted). Although Barlow pays lip service to a distinction between the indicators of trustworthiness and reliability necessary for Rule 804(b)(5) admissibility and confrontation clause challenge survival, Barlow reiterates the same factors enunciated for 804(b)(5) analysis in its consideration of the confrontation clause question. We see no significant difference between the situation presented in Barlow and the present case. United States v. Vigoa, 656 F.Supp. 1499 (D.N.J.1987), cited by Miller, is clearly distinguishable.
 
 
 32
 There was no constitutional confrontation clause violation demonstrated, in our view, in allowing Tinsley's uncross-examined grand jury testimony to be read to the jury.
 
 
 33
 IV. May Miller claim ineffective assistance of counsel?
 
 
 34
 Miller now claims ineffective assistance of counsel because of errors he himself made in the course of his representation of himself during trial. Miller's claim fails not only because it was not raised before the district court, but also because he clearly waived such a claim. First, "[A]n adequate post-conviction procedure is afforded by 28 U.S.C. Sec. 2255 for developing these allegations, if they can be so supported. That procedure obviates the deciding of the issue without opportunity for all parties to unfold the facts." United States v. Hill, 688 F.2d 18, 22 (6th Cir.), cert. denied, 459 U.S. 1074 (1982) (citation omitted).
 
 
 35
 Also, Miller was offered the opportunity to have appointed counsel on numerous occasions, and an attorney was appointed for him, but he consistently and adamantly demanded to represent himself, refusing at the same time to allow counsel to assist him. Miller was no stranger to the courts by his own admission and clearly was not "faced with a situation of enduring representation by counsel he considered ineffective or being forced to proceed immediately on his own." United States v. Grosshans, 821 F.2d 1247, 1251 (6th Cir.), cert. denied, 108 S.Ct. 506 (1987) (citation omitted). Because Miller insisted in representing himself, we hold that he made a knowing and voluntary waiver of his right to claim ineffective representation. See Faretta v. California, 422 U.S. 806, 834 n. 46 (1975); United States v. McDowell, 814 F.2d 245, 251 (6th Cir.), cert. denied, 108 S.Ct. 478 (1987). Miller simply cannot now complain to this court that his representation of himself was ineffective.
 
 
 36
 We accordingly AFFIRM Miller's conviction in all respects.
 
 
 
 *
 THE HONORABLE R. ALLAN EDGAR, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 According to the government, Miller's co-defendant pled guilty to distribution of dilaudid, aiding and abetting on November 5, 1986, and was sentenced to imprisonment on January 8, 1987
 
 
 [2]
 Tinsley was not allowed to read her testimony because of her outbursts and tendency to volunteer information. At Miller's request, the testimony was read in its entirety
 
 
 [3]
 Fed.R.Evid. 804(b)(5) provides:
 (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 * * *
 (5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.