UNITED STATES of America, Plaintiff–Appellee,

v.

Luis M. ALANIZ, Defendant–Appellant;

United States of America, Plaintiff–Appellee,

v.

Kenneth Mers, Defendant–Appellant.

Nos. 01–2542, 02–1023.

United States Court of Appeals, Sixth Circuit.

Aug. 28, 2003.

B. Rene Shekmer, U.S. Attorney's Office for the Western District of Michigan, Grand Rapids, MI, for Plaintiff–Appellee.

John Q. Lewis, Pearson N. Bownas, Cleveland, OH, Luis M. Alaniz, Bastrop, TX, Kenneth Mers, Florence, CO, Scott E. Pederson, Grand Rapids, MI, for Defendants–Appellants.

BEFORE: KEITH, COLE, and COOK, Circuit Judges.

## OPINION

COLE, Circuit Judge.

Appellants Luis M. Alaniz and Kenneth Mers are two of five co-defendants who were charged with conspiracy to distribute and to possess with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(vii). In case number 02–1023, Mers appeals his jury conviction and sentence, raising the following three issues: (1) whether the district court abused its discretion in allowing evidence of a prior drug transaction as background evidence at trial; (2) whether the district court abused its discretion in denying Mers's motion for a new trial based on the discovery of new evidence; and (3) whether the district court erred in sentencing Mers because the jury did not decide the drug quantity for which Mers was directly responsible. In case number 01–2542, Alaniz appeals his sentence following a plea of guilty, contending that the district court committed plain error in finding that he qualified as a career offender under the United States Sentencing Guidelines. For the reasons discussed herein, we AFFIRM in all respects in case number 02–1023, and VACATE and REMAND for a new sentencing hearing in case number 01–2542.

### I.

Co-defendants Alaniz and Mers, along with three other co-defendants, James Carver, Jack Neve, and Mark Marcus, were charged with one count of conspiracy to distribute and to possess with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vii). All of the co-defendants except Mers entered pleas of guilty to the charges. After a jury trial, Mers was convicted of the charges in the indictment.

## II. CASE 02–1023–MERS'S APPEAL

### A. Background

The testimony at Mers's trial established that Mers, Neve, and Alaniz were friends for more than thirty years. Neve lived in Michigan and Mers moved from Michigan to Colorado in 1999.

In late 2000, Alaniz and Carver were in Mexico, where they were involved in drug trafficking. In December 2000, Alaniz and Carver delivered approximately eighty pounds of marijuana to Mers. Mers later called Carver and asked him for "funds," which Carver understood to mean proceeds from the sale of marijuana, to buy a new vehicle. On February 28, 2001, Mers purchased a Cadillac.

In late February 2001, Alaniz and Carver traveled to Michigan, where they planned to deliver 850 pounds of marijuana to a customer in Detroit. Upon arrival, they discovered that the potential customer had died. They then contacted Marcus and Mers to ask for help in distributing and storing the marijuana. Mers said he could help in distributing the marijuana. and recruited Neve to become involved in the conspiracy by storing marijuana at Neve's house in Michigan. Mers provided Alaniz and Carver with Neve's phone number, and the two contacted Neve. Neve agreed to store the marijuana and Alaniz and Carver delivered approximately 500 pounds of marijuana to Neve's house.

On March 24 or 25, Mers traveled to Michigan, where he stayed at Neve's house on-and-off for the next two weeks. On April 1, 2001, Mers went on a week-long fishing trip in Northern Michigan with Michael Booth, who lived in Mount Pleasant, Michigan, and his brother, Jason Booth, who lived in Colorado with Mers. Mers returned to Colorado on April 12.

While Mers was staying at Neve's house, Mers, Neve, Alaniz and Carver met on several occasions. One or two days after Mers arrived, the four men met in Neve's basement. Carver testified that Mers gave Carver $3,500, which Carver believed was a payment for what Mers owed him for the Colorado transaction. After Mers returned from his fishing trip, the four men met at a restaurant to discuss their dealings. At this meeting, Mers and Neve gave Alaniz and Carver $1,000. In addition, the men discussed a plan to have Mers go to Mexico to supervise the growing of marijuana at a ranch that Alaniz and Carver controlled.

In late April, Alaniz and Carver went to Texas and Mexico for eight to ten days. When they returned to Michigan, Alaniz called Neve to ask for money for the marijuana. On May 3, Neve met with Alaniz and gave him an envelope containing $4,000, which Mers left with Neve before he returned to Colorado. Later that day, Alaniz and Carver took from Neve's house five bricks of marijuana, which they planned to deliver to James VanMiddlesworth. VanMiddlesworth was not home, and Alaniz and Carver brought the marijuana to Marcus's house.

Also on May 3, Carver informed Neve that he was a federal fugitive and that he planned to flee to Mexico. He told Neve that he and Alaniz had a 1600–pound load of marijuana in Texas and that Alaniz was planning to return to Michigan and to make Neve's house a headquarters for their operation. Neve became alarmed by what he had gotten himself into and, the next day, after seeing a telephone number on the back of a police car, called an anonymous tip line to provide information about Carver and the marijuana.

Battle Creek Police Officer Scott Eager testified that an anonymous tip was received on May 4, 2001 regarding two individuals at a motel who were involved in delivering marijuana. Eager went to the motel, where he encountered Alaniz and Carver. Eager seized a black business planner belonging to Alaniz, which contained the names Ken Mers and Mark Marcus. On the same page, the initials "JN" were marked, with a corresponding phone number. Alaniz testified that these initials referred to Neve and that the corresponding number was the number at which he contacted Neve.

On May 5, authorities seized 103.2 kilograms of marijuana from Neve's house. In addition, 44.096 kilograms of marijuana were seized from Marcus's garage.

## B. Discussion

### 1. Admission of Background Evidence

█ Mers's argues that the district court abused its discretion in allowing the admission of evidence relating to the Colorado marijuana transaction. Before trial, Mers learned that the Government planned to use this evidence as background evidence under Federal Rule of Evidence 401. The evidence at issue concerns Alaniz and Carver's testimony that they, in conspiracy with Mers, transported marijuana from Texas to Colorado in December of 2000; that Mers sold the marijuana; and that Mers used the proceeds to purchase a Cadillac. Mers filed a motion in limine, in which he objected to the introduction of this evidence. Mers argued that the evidence was Rule 404(b) evidence

of which he never received notice, and that the evidence was unfairly prejudicial and not probative of his intent to join the Michigan conspiracy alleged in the indictment. The Government informed the district court that it planned to offer evidence of the prior drug transaction between Carver, Alaniz, and Mers as background evidence because the prior deal led to Mers's involvement in the charged March 2001 offense involving Carver, Alaniz, Mers and Neve. The Government argued that the prior deal was relevant because it showed the ongoing relationship between Carver and Mers and explained why the conspirators were participating together in the Michigan offense. The district court ruled that the evidence was proper background evidence.

We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Price,* 329 F.3d 903, 905 (6th Cir.2003).

Mers seeks a new trial on the grounds that the district court erred in admitting evidence of the Colorado conspiracy as background evidence. Mers contends that background evidence typically establishes a relationship between the parties before the actual wrongdoing takes place, which was not the case here. He argues that the fact that the four co-conspirators had been friends for over twenty years could have been established without reference to the Colorado conspiracy, and that his involvement with the other defendants and his presence in Michigan could have been explained without reference to the Colorado transaction. The Government argues that the district court did not abuse its discretion in admitting the evidence as background evidence, as the evidence is inextricably intertwined with the charged offense, directly probative of the charged offense, formed an integral part of witness testimo-

ny, and completed the story of the charged offense.

In *United States v. Hardy,* we explained that a limited category of "background evidence" does not implicate Rule 404(b). 228 F.3d 745, 748 (6th Cir.2000); *see also United States v. Pierce,* 62 F.3d 818, 829 (6th Cir.1995) ("Rule 404(b) does not prevent the government from establishing how members of a conspiracy are related, solely because doing so would include evidence of prior criminal activities."). Background evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *Hardy,* 228 F.3d at 748 (citations omitted). The *Hardy* Court further explained:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Id.*

A review of the record demonstrates that the district court did not abuse its discretion in admitting evidence of the Colorado transaction as background evidence. The district court found that the evidence met the test for background evidence as discussed in *Hardy.* The district court properly found that the evidence of the Colorado transaction was temporally appropriate, as one set of drug dealing appeared to have morphed into the subsequent transactions. Furthermore, in this case, the facts were complicated by Mers's alleged innocent reason for being in Michigan and for his involvement with one of the conspirators—the long-planned fishing

trip. The district court concluded that, without the evidence pertaining to the Colorado transaction, "the Government really is improperly hand-strung on its ability to explain why the defendant was in Michigan doing what he was alleged to have been doing particularly where here there is another legitimate reason that perhaps formed at least part of the reason why the defendant was in Michigan, *i.e.,* fishing in the northern part of the state." J.A. at 231–32. The challenged evidence, according to the district court, if accepted by the jury, would provide the reason why the fishing trip either turned into or had a subrosa purpose–the location of a place to store drugs that could not immediately be distributed because of an aborted drug transaction caused by the death of the original customer in Detroit. We find that the district court properly concluded that the evidence was a prelude to the charged offense; directly probative of the charged offense; appeared to arise from the same events; formed an integral part of the testimony of the witnesses that claimed to have information on the issue; and completed the story of the charged offense.

Mers also argues that the district court never made an explicit "probative value" determination, as required by Federal Rule of Evidence 403. This argument lacks merit. The district court properly balanced the probative value of the background evidence against the danger of unfair prejudice. According to the district court, while the evidence was unquestionably prejudicial, laying the evidence before the jury as background did not result in a prejudice that substantially outweighed its probative value.

■ Finally, Mers challenges the district court's denial of a proposed limiting instruction to the effect that the jury should not consider the background evidence as direct evidence that Mers was involved in the alleged drug conspiracy. The district court properly denied the requested limiting instruction, as the proposed instruction has no basis in law.

## 2. Motion for New Trial

Mers's second argument on appeal is that the district court abused its discretion in denying his motion for new trial based on the alleged discovery of two items of new evidence. First, based on a series of post-trial written statements, Mers claimed that Alaniz was a "witness for Defendant who was not available at the first trial of the Defendant." J.A. at 53. Specifically, Mers alleged that in his post-trial affidavits, Alaniz stated that Mers was not involved with the Michigan conspiracy and that Carver and Neve were not truthful when they testified that Mers was involved with the Michigan conspiracy. Second, Mers claimed that Carver's planner, which was seized from Carver's hotel room, indicated that Neve sold $25,000 worth of marijuana, or in the alternative, that Neve owed Carver $25,000. Mers claimed that the notations in the planner contradicted the trial testimony of Carver and Neve and thus would have reflected negatively on their credibility.[1]

On December 3, 2001, prior to sentencing, the district court addressed the motion for new trial. Mers's counsel stated that Mers first suggested the idea that the planner was impeachment evidence when Mers learned about the notations in the planner from the probation officer. Next,

---

1. The parties dispute whether the planner was made available to Mers prior to trial. Mers claims that the planner was not disclosed to him prior to trial and that he only learned of it during the presentence interview with his probation officer. The Government denies this, and asserts that the planner was disclosed prior to trial.

counsel received from Mers the handwritten statements of Alaniz, which among other things stated that Neve had $25,000 for Carver and Alaniz.[2] After reviewing all of the evidence, the district judge denied the motion for new trial.

We review the denial of a motion for new trial based on newly discovered evidence under an abuse of discretion standard. *United States v. Dailide*, 316 F.3d 611, 620 (6th Cir.2003). "A district court clearly abuses its discretion when it applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *United States v. Turns*, 198 F.3d 584, 586 (6th Cir.2000) (quotation omitted). "Whether the proper legal standard was applied, however, is a legal question that this court reviews de novo." *United States v. Willis*, 257 F.3d 636, 642 (6th Cir.2001) (citations omitted).

First, Mers argues that Alaniz's post-trial statements are crucial to his defense because Alaniz stated that Neve was selling the Michigan marijuana; that Neve owed Carver money; and that Neve gave Carver money when they met at the Bedford, Michigan restaurant. All of these facts were denied by Neve at trial. Second, Mers argues that the planner was crucial because it shows that Neve paid Carver money, a fact that both Carver and Neve denied at trial. Because this evidence allegedly shows that Neve was actively selling the Michigan marijuana, Mers argues that it undermines Neve's credibility.

The district court did not abuse its discretion in denying Mers's motion for new trial. In *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir.1982), we enunciated

the test by which motions for a new trial based on newly discovered evidence are reviewed. "Pursuant to the *Barlow* test, a new trial motion will be granted based on newly discovered evidence only if the defendant can prove that the evidence was: (1) discovered only after trial; (2) could not have been discovered earlier with due diligence; (3) is material and not merely cumulative or impeaching; and (4) would likely produce an acquittal if the case were retried." *Willis*, 257 F.3d at 642 (citing *Barlow*, 693 F.2d at 966). This test "has consistently been used in this circuit to scrutinize new trial motions based on newly discovered evidence." *Id.* (citations omitted).

A different test, which we first adopted in *Gordon v. United States*, 178 F.2d 896 (6th Cir.1949), applies to the "unique situations in which a material witness for the government recants his testimony after the trial." *Willis*, 257 F.3d at 643. Under the *Gordon* test,

> a motion for a new trial based on the recantation of a material government witness should be granted only if: (1) the court is reasonably well satisfied that the trial testimony given by the material witness is false; (2) without the false testimony, the jury might have reached a different conclusion; and (3) the party seeking the new trial was taken by surprise when the false testimony was given, and was unable to meet it or did not know of its falsity until after the trial.

*Willis*, 257 F.3d at 642–43 (citing *Gordon*, 178 F.2d at 900).

 The district court found that both the *Barlow* test and the *Gordon* test were

---

2. However, it was established at the hearing that the $25,000 figure is not contained in the planner. The PSR contained a typographical error showing the notations as "J 1,000, 25,- 000, and 2,000." J.A. at 98–99. In fact, Carver's planner contained the notations "J 1,000, 2,500, and 2,000."

applicable to Mers's motion for new trial. First, the *Gordon* test was the appropriate standard by which to consider the portions of Alaniz's written statements that could be considered recantation of his trial testimony. Accepting the affidavits at face value in the light most deferential to Mers. the district court concluded that the allegedly inconsistent statements did not warrant a new trial. According to the district court, while Alaniz's trial testimony was not particularly incriminating of Mers to begin with, the majority of the new written statements dealt with the relative culpability of Carver, Neve and Alaniz, as opposed to the bulk of evidence of Mers's involvement in the conspiracy. The district court found that none of the three elements of the *Gordon* test were met: the arguable inconsistencies between Alaniz's trial testimony and later written statements did not strongly suggest that his trial testimony was false; it was not reasonable to conclude that the jury might have reached a different conclusion if it had heard Alaniz's later clarifications; and "[Alaniz's] incomplete trial testimony cannot be deemed to have been so damaging as to come to a great surprise to the Defendant, rendering him unable to challenge or refute it until after the trial." J.A. at 115. We agree with the conclusions and analysis of the district court. The district court did not abuse its discretion in its application of the *Gordon* test to this case.

■ In addition, the district court correctly applied the *Barlow* test to the portions of Alaniz's statements that could be considered impeachment-Alaniz's contentions that Carver and Neve perjured themselves at trial. The district court found that a new trial was not warranted because the third and fourth elements of the *Barlow* test were not met. According to the district court, even assuming Alaniz's statements concerning the truthfulness of

Neve's and Carver's testimony were not and could not with due diligence have been discovered until after trial. those new statements were merely impeaching "and not so material to Mers'[s] guilt or innocence as to likely produce an acquittal if the case were retried." J.A. at 116. Again, we agree with the conclusions of the district court.

■ The district court also applied the *Barlow* test to the alleged newly discovered evidence of the planner, which was offered to show Neve's greater culpability in the conspiracy as well as to undermine his credibility. The district court found the evidence merely impeaching and thus insufficient to warrant a new trial. According to the district court, after considering all of the testimony, "there was ample evidence in this case for a reasonable jury to convict the Defendant, regardless of the relative culpability of Neve, Carver and Alaniz." J.A. at 123. The district court did not abuse its discretion in so finding, and properly denied the motion for new trial based on newly discovered evidence.

### 3. Mers's Sentence

Finally, Mers argues that the district court erred in sentencing him because the jury did not decide beyond a reasonable doubt the amount of marijuana with which he was directly involved. Mers claims that the jury verdict form simply allowed a decision that the conspiracy involved 100 kilograms, but not that he was directly involved with 100 kilograms. He claims that this is in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

"We review a district court's calculation of the amount of drugs under the Sentencing Guidelines for clear error." *United States v. Copeland*, 321 F.3d 582, 606 (6th Cir.2003).

■ Mers's argument lacks merit. There is no authority for the contention that, in a drug conspiracy case, the jury must determine the drug quantity for which each co-conspirator is individually responsible. The district court instructed the jury that the Government must prove each element of the offense beyond a reasonable doubt. The verdict form states that the jury found Mers guilty of conspiracy to distribute and to possess with intent to distribute more than 100 kilograms of marijuana. The quantity was correctly submitted to the jury and the district court did not err in sentencing Mers.

### III. CASE 01–2542–ALANIZ'S APPEAL

■ After Alaniz entered into a plea agreement, the district court, relying on the Presentence Investigation Report ("PSR"), sentenced Alaniz as a career offender pursuant to U.S.S.G. § 4B1.1. The PSR indicated that Alaniz had two prior convictions—a 1990 Texas conviction for delivery of cocaine and a 1997 Tennessee conviction for possession with intent to distribute marijuana. At the time of sentencing, the PSR indicated that the records relating to the 1990 Texas conviction were not retrievable. Subsequently, appellate counsel retrieved the records pertaining to this 1990 conviction. These records demonstrate that this conviction was for possession of cocaine, and not delivery, distribution, or possession with intent to distribute. Alaniz now argues that, had the PSR been accurate, he would not have had two prior predicate convictions for distributing drugs and would not qualify as a career offender under § 4B1.1.

Because Alaniz did not raise objections to the PSR before the district court. we review for plain error. FED. R. CR. P. 52(b). To establish plain error. a defendant must show that (1) there is an error; (2) that is "plain" or "clear" under current law; and (3) the error affects substantial rights. *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *see also Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718. 466–67 (1997); *United States v. Page,* 232 F.3d 536, 543 (6th Cir.2000). "If these conditions are met, we may exercise discretion and notice the error only if the error 'seriously affect[s] the fairness. integrity, or public reputation of judicial proceedings.'" *Page,* 232 F.3d at 543–44 (quoting *Johnson,* 520 U.S. at 467, 117 S.Ct. 1544); *see Olano,* 507 U.S. at 736, 113 S.Ct. 1770.

Alaniz argues that the district court committed plain and reversible error in relying upon a mistaken PSR to designate him as a career offender under the Sentencing Guidelines. The Government accepts that the newly retrieved Texas conviction records relate to the conviction in the PSR, and further accepts that if those records are correct, a plain error may have occurred.

We agree that a plain error has occurred. First, there was an error in that Alaniz's 1990 conviction was not a controlled substance offense under the Guidelines. The error is plain, as the conviction record confirming the error is attached to Alaniz's brief and is part of the record on appeal. Furthermore, this error substantially affects Alaniz's rights because, had the PSR been accurate, Alaniz would have received a sentence of between seventy and eighty-seven months, as opposed to the 144–month sentence he received as a career offender. Finally, the error, which led to the imposition of a sentence significantly longer than that which Alaniz would have received, seriously affects the fairness of the proceedings. *See Page,* 232 F.3d at 545. We, therefore, find it appropriate to vacate Alaniz's sentence and re-

mand for a new sentencing hearing based upon an accurate PSR.

 While the Government concedes that a plain error may have occurred and that a new sentencing proceeding may be warranted, the Government argues that, upon remand, the district court should be able to review also the level of departure warranted for substantial assistance. The Government contends that the district court granted Alaniz an additional level of downward departure, not based on substantial assistance, but rather to equalize Alaniz's sentence with that of Carver, who also was a career offender. According to the Government, if the district court finds on remand that Alaniz is not a career offender, the alleged "equalization justification" for the additional downward departure level should no longer apply.

This argument lacks merit. A review of the transcript from Alaniz's sentencing hearing reveals that the district court reasoned that Alaniz and Carver should be treated the same with regard to the level of downward departure unless there "really [was] a substantive difference in the amount or value of cooperation that they have provided to the Government in this case." The district court concluded that there was not such a substantive difference in assistance provided to the Government. This inquiry, and the district court's granting of a larger downward departure, is unrelated to the application of the career offender enhancement. The plain error in this case solely affects the career offender determination, and the scope of the district court's sentencing authority on remand is limited to this issue. *See United States v. Moore,* 131 F.3d 595, 599 (6th Cir.1997).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the conviction and sentence in case number 02–1023. and VACATE and REMAND case number 01–2542 for the limited purpose of determining the applicability of the career offender enhancement in light of an accurate PSR.