*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0418p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

        No. 07-5474

CHRIS ROBINSON,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 06-00004—Curtis L. Collier, Chief District Judge.

Argued: September 17, 2008

Decided and Filed: November 24, 2008

Before: GUY, BATCHELDER, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Paul D. Cross, CLEMENTS & CROSS, Monteagle, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Paul D. Cross, CLEMENTS & CROSS, Monteagle, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

_____

## OPINION

_____

    ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellant Chris Robinson appeals his conviction and sentence for conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. Robinson argues that: (1) the district court erroneously instructed the jury to determine the quantity of cocaine "involved in the conspiracy" instead of the quantity individually attributable to him; (2) the district court failed to charge a violation of 21 U.S.C. § 841(b)(1)(C) as a lesser-included offense; (3) the evidence was insufficient to prove his participation in a conspiracy; and (4) there was a prejudicial variance between the indictment and the proof at trial. Finding no merit in any of these contentions, we AFFIRM.

## I. BACKGROUND

    A grand jury indicted Robinson for his role in a conspiracy to distribute five or more kilograms of cocaine in the Eastern District of Tennessee from December 2003 through March 2006. At trial, the primary evidence against Robinson consisted of alleged co-conspirator Juan Valentin's testimony and a series of recorded telephone conversations between Valentin and Robinson that

1

DEA officers intercepted from Valentin's cell phone over a period of 88 days, beginning on May 5, 2005.

Valentin testified that beginning in December 2003, he developed "a business relationship" with Robinson in which the two of them worked together to sell cocaine. According to Valentin, he sold cocaine to Robinson "once or twice a week" in various quantities, sometimes on credit. The quantity he most frequently sold to Robinson was four-and-a-half ounces, which Valentin described as a "regular," and the largest single quantity exchanged between them was half a kilogram. Besides purchasing and distributing cocaine, Robinson helped the conspiracy in other ways, Valentin explained. Robinson introduced Valentin to Troy Allison, who became one of Valentin's "good customer[s]" of cocaine.[1] Valentin testified that Robinson once accompanied him to Memphis, Tennessee, to pick up "a couple kilos" of cocaine.

Most of the recorded telephone conversations consist of Robinson's ordering various quantities of cocaine.[2] But the calls reveal other aspects of Robinson's involvement with the business: Robinson twice warns Valentin about police investigation into Valentin's activities; Valentin several times asks Robinson to help collect money from individuals whom Valentin had given cocaine on credit; and Valentin on one occasion discusses with Robinson how to retrieve a safe full of cash from a car impounded by the police.

After the presentation of all evidence, the district court charged the jury, in part:

> If you determine defendant is guilty of the offense charged in Count 1, you must then determine whether that offense involved the particular quantity of drugs charged in the indictment. In Count 1 defendant is charged with conspiring to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride. On the verdict form I have asked you to answer some questions about the amount of the mixture and substance containing a detectable amount of cocaine hydrochloride in this offense. In determining the amount of controlled substance involved in each of these crimes, you should consider all of my previous instructions regarding the consideration of evidence. You should only answer yes to one of these questions on the verdict form if you determine, first, that defendant is guilty beyond a reasonable doubt of the particular offense charged in the indictment, and, second, that the government has proven beyond a reasonable doubt that the offense involved the specified quantity of a mixture and substance containing a detectable amount of cocaine hydrochloride listed in the question.

Question 1(A) of the verdict form directed the jury to complete the following sentence: "We, the jury, unanimously find that the defendant, ___ (IS NOT/IS) guilty of the offense charged in Count 1 of the Indictment." If the jury answered "IS guilty" to Question 1(A), they were directed to answer "Yes" or "No" to Question 1(B): "Do you, the jury, unanimously find the Government has proved beyond a reasonable doubt that the offense charged in Count 1 of the Indictment involved five kilograms or more of a mixture or substance containing cocaine hydrochloride?" If the jury answered "No" to Question 1(B), they were asked to answer Question 1(C): whether the jury found the quantity of cocaine to be at least 500 grams.

---

[1]Troy Allison testified that Robinson had introduced him to Valentin. Allison purchased "a quarter kilo" of cocaine from Valentin upon meeting him and continued to buy from him after that. Allison "ultimately buil[t] up to" buying one kilogram of cocaine at a time from Valentin, with his largest single purchase being two kilograms.

[2]In the 14 conversations played for the jury, Valentin and Robinson discuss a minimum total of 38-and-a-half ounces of cocaine.

During their deliberations, the jury sent a question to the court inquiring "whether Mr. Robinson must have knowledge of the selling of 5 kilograms of cocaine hydrochloride or if he has to have direct involvement with selling 5 kilograms of cocaine hydrochloride." Robinson's counsel argued "that knowledge is required" and "that the answer should be yes." The district court, however, responded:

> With respect to the conspiracy, the instructions indicate that the government must prove that two or more persons conspired or agreed to commit the crime of distributing cocaine hydrochloride, the defendant knowingly joined the conspiracy, and the defendant voluntarily and intentionally participated in the conspiracy. Again, the essence of the conspiracy is the agreement, not the accomplishment of the act.
> Concerning the drug quantities, you are merely to determine what quantity was involved in the conspiracy the defendant participated in, in the event you find he participated in a conspiracy.

The jury returned a verdict of guilty and found that the quantity of cocaine involved in the conspiracy was five kilograms or more. The district court imposed a sentence of life imprisonment, and Robinson timely appealed his conviction to this Court.

## II. ANALYSIS

### A.      Drug Quantity Instruction

"This court reviews a district court's 'actions in responding to questions from the jury' for abuse of discretion." *United States v. Davis*, 490 F.3d 541, 548 (6th Cir. 2007) (quoting *United States v. August*, 984 F.2d 705, 712 (6th Cir. 1992)). "This circuit has set a high standard for reversal of a conviction on the grounds of improper instructions." *United States v. Khalil*, 279 F.3d 358, 367 (6th Cir. 2002) (quoting *United States v. Sheffey*, 57 F.3d 1419, 1429 (6th Cir. 1995)). "A reviewing court may reverse a judgment only if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *Id.* (quoting *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993)).

In its initial instructions, and again in response to the jury's question, the district court directed the jury to determine the quantity of cocaine "involved in the conspiracy." These instructions tracked the language of 21 U.S.C. § 841(b)(1)(A), which provides:

> *In the case of a violation of* [21 U.S.C. § 841(a)] *involving* . . . 5 kilograms or more of a mixture or substance containing a detectable amount of . . . cocaine . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . If any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release.

(Emphasis added).[3] 21 U.S.C. § 841(a)(1) makes it "unlawful for any person knowingly or intentionally—to . . . distribute . . . a controlled substance." 21 U.S.C. § 846 in turn provides: "Any person who attempts or conspires to commit any offense defined in this title shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The district court thus instructed the jury that the relevant quantity

---

[3]Robinson has two prior convictions for felony drug offenses.

determination is of the quantity involved in the violation of 21 U.S.C. §841(a) — in this case, a conspiracy to distribute cocaine. The jury's finding that the quantity equaled or exceeded the threshold amount of five kilograms triggered a mandatory life sentence for Robinson.

Citing our decision in *United States v. Pruitt*, 156 F.3d 638 (6th Cir. 1998), Robinson argues that a drug conspirator is culpable only for quantities personally attributable to him. The issue in *Pruitt*, however, was "whether a conspiracy involving multiple overt acts is nonetheless 'a violation' of [21 U.S.C.] § 841(a)" such that the drug quantities from those multiple acts can be aggregated for sentencing under 21 U.S.C. § 841(b)(1)(A). *Id.* at 644. This Court answered the question in the affirmative, noting that "a conspiracy is a single, unified offense" and that "the traditional rule . . . treats a conspiracy as a whole." *Id.* We thus interpreted 21 U.S.C. § 841(b)(1)(A) to focus on the threshold quantity involved in the entire conspiracy.

Robinson nonetheless contends that other language from that opinion supports his position. He points, for example, to our observation in *Pruitt* that "[w]hile a person who participates in a drug conspiracy does not necessarily agree to a specific amount in advance, no defendant may be held responsible for acts beyond the scope of his or her participation in the conspiracy." *Id.* at 644-45 (citing *United States v. Myers*, 102 F.3d 227, 237 (6th Cir. 1996) (citing in turn *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946))). "[T]his rule," we explained, "provides adequate protection against the possibility that a less culpable, 'small-time' seller of drugs will be caught up in the sweep of § 841(b) due to the acts of coconspirators." *Id.* at 645. We also observed that "the district court included only amounts for which [the appellant] was directly responsible, rather than imputing to him the acts of other defendants, despite conviction on the conspiracy count." *Id.*

These statements do not help Robinson as much as he would like. Again, the issue in *Pruitt* was whether a conspiracy comprising multiple transactions was a single violation of 21 U.S.C. § 841(a). The issue was not whether the appellant was culpable for acts of his co-conspirators, and any pronouncements on that topic are dicta. Moreover, that portion of *Pruitt* turned on an analysis of *Pinkerton*. Although our *Pinkerton* analysis was correct, it is inapplicable here. *See United States v. Collins*, 415 F.3d 304, 313 (4th Cir. 2005) ("The principles outlined in *Pinkerton* . . . have no applicability to a conviction under § 846. *Pinkerton* principles are relevant when a conspirator is charged with a substantive offense arising from the actions of a co-conspirator, not when a conspirator is charged with conspiracy."). It is true that a conspirator is liable for the substantive offenses of his co-conspirators only if those offenses are, among other things, reasonably foreseeable to him. *Pinkerton*, 328 U.S. at 647-48. But this principle is distinct from the equally established rule that conspiracy is an inchoate offense that needs no substantive offense for its completion. *Ianelli v. United States*, 420 U.S. 770, 777-78 (1975). The district court here was correct to remind the jury that "the essence of the conspiracy is the agreement, not the accomplishment of the act." *See United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) ("An overt act need not be proven in a § 846 conspiracy.") (quoting *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986)).

Our holding in *Pruitt* affirms this understanding of drug conspiracies. We distinguished culpability for the conspiracy itself from culpability for the substantive offenses of co-conspirators. Although a "small-time" drug seller may not be responsible for all the transactions or actions of his associates, he is responsible for the conspiracy in which he participated. While we observed that the district court included only amounts for which it found the appellant directly responsible, we noted this fact only inasmuch as it demonstrated that he was not improperly held culpable for the substantive offenses of his co-defendants. *Pruitt*, 156 F.3d at 645. And we recognized that 21 U.S.C. § 841(b)(1)(A) prescribes mandatory sentences for "a violation" — including a conspiracy — "involving" certain threshold amounts of drugs. *Id.* Accordingly, the quantity instructions here did not improperly lead the jury to convict Robinson for the substantive acts of his co-conspirators.

Similarly unavailing is Robinson's suggestion that the quantity instructions violated the rule articulated by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Here, the "fact" that increases the default penalty for a conspiracy to distribute drugs is the quantity of drugs involved in the conspiracy.

The First Circuit has noted that *Apprendi* did not overrule the Supreme Court's earlier decision that

> as long as (1) the jury finds beyond a reasonable doubt that a defendant participated in a conspiracy, and (2) the Court sentences him within the statutory maximum *applicable to that conspiracy*, the court may "determine both the amount and the kind of 'controlled substances' for which [the] defendant should be held accountable — and then . . . impose a sentence that varies depending upon amount and kind."

*Derman v. United States*, 298 F.3d 34, 42 (1st Cir. 2002) (quoting *Edwards v. United States*, 523 U.S. 511, 513-14 (1998)) (emphasis in original). The jury need only determine that the defendant participated in a conspiracy involving "a type and quantity of drugs sufficient to justify a sentence above the default statutory maximum." *Id.* at 43. Most other circuits have agreed that *Apprendi* is satisfied where the jury finds, beyond a reasonable doubt, the quantity of drugs involved in the conspiracy as a whole under 21 U.S.C. § 841(b)(1)(A).[4] *See United States v. Phillips*, 349 F.3d 138, 142-43 (3rd Cir. 2003), *vacated and remanded on other grounds sub nom. Barbour v. United States*, 543 U.S. 1102 (2005), *United States v. Turner*, 319 F.3d 716, 722-23 (5th Cir. 2003), *United States v. Knight*, 342 F.3d 697, 710 (7th Cir. 2003), *United States v. Stiger*, 413 F.3d 1185, 1192-93 (10th Cir. 2005), *vacated and remanded on other grounds sub nom. Mack v. United States*, 543 U.S. 1107 (2005); *but see United States v. Collins*, 415 F.3d 304, 313-14 (4th Cir. 2005) and *United States v. Banuelos*, 322 F.3d 700, 704-05 (9th Cir. 2003).

Here, the district court had no occasion to determine the amount or kind of drugs for which Robinson was personally responsible because there was no range within which the court had discretion to choose a sentence; the quantity of cocaine involved in the conspiracy and Robinson's prior felony drug convictions triggered a mandatory life sentence. Therefore, because the jury found beyond a reasonable doubt that Robinson had participated in a conspiracy that involved five or more kilograms of cocaine, there can be no *Apprendi* error. *See Derman*, 298 F.3d at 42-43.

Viewed under the abuse-of-discretion standard, the district court's response to the jury's question was not "confusing, misleading and prejudicial." *Khalil*, 279 F.3d at 367. Given that the court's instruction was faithful to the language of 21 U.S.C. § 841(b)(1)(A), Robinson's argument that a different answer was required does not overcome our "high standard for reversal of a conviction on the grounds of improper instructions." *Id.*

## B.        Lesser-Included-Offense Instruction

Robinson argues that the district court should have charged a violation of 21 U.S.C. §841(b)(1)(C) (distribution of cocaine with no finding of a threshold quantity) as a lesser-included offense. By failing to do so, Robinson insists, the court deprived the jury of a "third option" and presented them with an "all-or-nothing choice."

---

[4]We have previously adopted this view in unpublished opinions. *See United States v. Alanis*, 75 F. App'x 344, 351-52 (6th Cir. 2003); *United States v. Grooms*, 194 F. App'x 355, 362 (6th Cir. 2006).

Robinson concedes that he did not request such a charge and that review on this issue is for plain error. *See United States v. Jones*, 403 F.3d 817, 821 (6th Cir. 2005) ("[W]here a 'defendant neither requested nor submitted a lesser-included-offense instruction, and did not object to the instructions given by the trial judge, the jury instructions are reviewable only for plain error.'") (quoting *United States v. Donathan*, 65 F.3d 537, 540 (6th Cir. 1995)). "Under the plain error standard, we may reverse if (1) there was error that (2) was plain, (3) affected a substantial right, and (4) 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Martin*, 520 F.3d 656, 658 (6th Cir. 2008) (quoting *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993))).

> A criminal defendant is entitled to an instruction on a lesser-included-offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser.

*United States v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001) (quoting *United States v. Monger*, 185 F.3d 574, 576 (6th Cir. 1999)).

Because Robinson never requested a lesser-included-offense instruction, he did not satisfy the first prong of *Colon* and cannot prove any error, much less plain error. Moreover, Robinson's rights were not prejudiced; the verdict form required the jury to determine beyond a reasonable doubt whether the threshold amounts of five kilograms or 500 grams were involved in the conspiracy. An answer of "No" to both of the quantity interrogatories necessarily would have meant that the jury did not find either of the threshold amounts. The verdict form thus provided a "third option" by allowing the jury to convict Robinson of a conspiracy that did not involve any particular quantity of cocaine.

## C.        Sufficiency of the Evidence

Robinson argues that the evidence was insufficient to prove the existence of a conspiracy.[5] "In determining the sufficiency of the evidence to support a guilty verdict 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Martin*, 520 F.3d at 660 (quoting *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990) (quoting in turn *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))).

To establish a violation of 21 U.S.C. § 846, "the government must prove, beyond a reasonable doubt, '(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy.'" *United States v. Caver*, 470 F.3d 220, 232 (6th Cir. 2006) (quoting *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999)). Drug conspiracies "often assume[] a vertical pattern of distribution, where each successive distributor sells a lower volume to any particular customer. . . . [A]n agreement to supply drugs to a given area can be inferred from the interdependence of the enterprise." *Id.* at 233. "In a drug distribution 'chain' conspiracy, it is enough to show that each member of the conspiracy realized that he was participating in a joint venture, even if he did not know the identities of every other member, or was not involved in all the activities in furtherance of the conspiracy." *United States v. Martinez*, 430 F.3d 317, 332-33 (6th Cir. 2005). "'[E]vidence of repeat purchases provides evidence of more than a mere buyer-seller relationship,' and the quantity of drugs may also support an inference of

---

[5]Robinson does not challenge the sufficiency of the evidence regarding the threshold quantity of cocaine.

conspiracy." *Id.* at 333 (quoting *United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003)). Also, the "trust involved" in delivering drug quantities on credit "suggests more than a buyer-seller relationship." *United States v. Nesbitt*, 90 F.3d 164, 167 (6th Cir. 1996).

The evidence was sufficient to show that Robinson conspired with Juan Valentin and others to distribute cocaine. Valentin testified that he and Robinson shared a "business relationship" and that they worked together to sell cocaine. Robinson purchased drugs from Valentin once or twice a week, sometimes on credit, over a period of several years. On at least one occasion, Robinson accompanied Valentin to a source city to pick up "a couple kilos" of cocaine. Robinson helped collect money other buyers owed Valentin. He warned Valentin about police activity. He conferred with Valentin about how to recover drug proceeds from an impounded car. Robinson introduced Troy Allison to Valentin, and Allison became one of Valentin's "good customer[s]." From this evidence a rational trier of fact could find that there was an agreement to violate drug laws, that Robinson knowingly and intentionally joined the conspiracy, and that Robinson participated in the conspiracy.

### D.     Variance

Robinson argues that there was a prejudicial variance between the indictment and the proof at trial because the indictment alleged one large conspiracy while the evidence demonstrated several smaller conspiracies. "The court of appeals reviews the question of whether a variance has occurred *de novo*."[6] *Caver*, 470 F.3d at 235. "Within the context of a conspiracy, a variance constitutes reversible error only if a defendant demonstrates that he was prejudiced by the variance and that the 'indictment allege[d] one conspiracy, but the evidence can reasonably be construed *only* as supporting a finding of multiple conspiracies.'" *Id.* at 235-36 (quoting *United States v. Warner*, 690 F.2d 545, 548 (6th Cir. 1982)) (emphasis in original). "In making this determination, the evidence must be viewed in the light most favorable to the government." *Id.*

#### 1.     *Existence of a Single Conspiracy*

"To prove a single conspiracy, the government need only show that each alleged conspirator had knowledge of and agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Smith*, 320 F.3d 647, 653 (6th Cir. 2002), *vacated and remanded on other grounds*, 510 U.S. 1180 (2005). "[A] single conspiracy does not become multiple conspiracies simply because each member of the conspiracy did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy." *Warner*, 690 F.2d at 549. Drug conspiracies "are often 'chain' conspiracies" which "normally involve numerous sales and resales of drugs until they reach the ultimate consumers." *Id.* "Because the success of participants on each level of distribution is dependent upon the existence of other levels of distribution, each member of the conspiracy must realize that he is participating in a joint enterprise, even if he does not know the identities of many of the participants." *Id.*

Here, the government proved that Robinson knew about and agreed to participate in a collective venture to sell cocaine in eastern Tennessee. The same evidence supporting a finding of Robinson's participation in the conspiracy supports a finding that there was a single conspiracy. Robinson cooperated with both Valentin and "downstream" sellers to maintain a profitable enterprise. Robinson helped Valentin acquire drugs, develop new customers, avoid police detection,

---

[6]If the issue of variance is not raised at trial, however, review is for plain error. *Caver*, 470 F.3d at 235. The parties have not indicated whether Robinson raised this issue at trial or, if he did, where in the record it appears. We find that, under either standard of review, Robinson has not shown that a variance occurred or that his rights were prejudiced.

and collect money. These actions support the inference that Robinson wanted to protect Valentin's interests, at least so he could maintain him as a source. Also, Robinson made sure that he had enough cocaine to supply the dealers who were buying from him. The evidence points to a conclusion that there was an "interdependence of the enterprise," *Caver*, 470 F.3d at 233, and we cannot say that the evidence "can reasonably be construed *only* as supporting a finding of multiple conspiracies." *Id.* at 236 (quoting *Warner*, 690 F.2d at 548) (emphasis in original).

　　　2.　　　*Prejudice*

"[E]ven if a variance exists, it does not constitute reversible error 'unless it prejudices [the defendant's] substantial rights.'" *United States v. Lee*, 991 F.2d 343, 349 (6th Cir. 1993) (quoting *United States v. Guerra-Marez*, 928 F.2d 665, 671 (5th Cir. 1991)). "Moreover, 'if the government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting that defendant's substantial rights.'" *Id.*

Even assuming a variance, Robinson has failed to demonstrate how he has been prejudiced. This is not a case where there could be a danger of "transferred guilt" from evidence of multiple conspiracies in which Robinson was not involved. In any event, even if the evidence proved only multiple conspiracies, the government has proved Robinson's involvement in at least one of them.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Robinson's conviction and sentence.